ROSS, APPELLEE, *v.* ROSS, APPELLANT.

(No. 80-478—Decided December 23, 1980.)

Mr. *Thomas M. Spetnagel,* for appellee.
Mr. *Charles L. Huddleston, Jr.,* for appellant.

*Per Curiam.* The issue before this court is whether the trial court's determination that the best interests of the children would be served by a modification of custody was against the manifest weight of the evidence.

This court does not undertake to weigh the evidence and pass upon its sufficiency but will ascertain from the record whether there is some competent evidence to sustain the findings of the trial court. *Foster* v. *Scottish Union & Natl. Ins. Co.* (1920), 101 Ohio St. 180, 185; *Indemnity Co.* v. *Bd. of Commrs.* (1923), 107 Ohio St. 51, paragraph one of the syllabus; *Katz* v. *American Finance Co.* (1925), 112 Ohio St. 24, paragraph two of the syllabus; *Maus* v. *Auglaize Natl. Bank* (1932), 125 Ohio St. 32, 35; *State, ex rel. Kobelt,* v. *Baker* (1940), 137 Ohio St. 337, 340; and 5 Ohio Jurisprudence 3d 170, 202, Appellate Review, Sections 594, 605, and cases cited therein.

This case is here "for the determination of all questions presented by the record, except the weight of the evidence. Whether there is any evidence to support the verdict and judgment in the common pleas court is a question that must be answered by this court before it can determine whether the

judgment of affirmance [reversal in this cause] in the court of appeals is erroneous***." (Bracketed material ours.) *Iron Co.* v. *Rook* (1915), 93 Ohio St. 152, at pages 156-157.

Additionally, as stated by this court in *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

We turn now to a review of the trial judge's determination and the evidence to support that determination. Judge James M. Drennen, who rendered the initial custody decree, found from the evidence adduced at the modification hearing that the children's best interests would be served by a modification of custody. Although neither party requested findings of fact or conclusions of law, it is apparent from reading the trial judge's decision and summation at the modification hearing that he applied the elements, standards and factors of R. C. 3109.04(B) and (C)* in making his decision. Furthermore, there is some

---

* The pertinent provisions of R. C. 3109.04 are as follows:

"(B) The court shall not modify a prior custody decree unless it finds, based on facts which have arisen since the prior decree or which were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the custodian designated by the prior decree, unless one of the following applies:

"(1) The custodian agrees to a change in custody.

"(2) The child, with the consent of the custodian, has been integrated into the family of the person seeking custody.

"(3) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of such change to the child.

"(C) In determining the best interests of a child pursuant to this section, whether on an original award of custody or modification of custody, the court shall consider all relevant factors, including:

"(1) The wishes of the child's parents regarding his custody;

"(2) The wishes of the child regarding his custody if he is eleven years of age or older;

"(3) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interests;

"(4) The child's adjustment to his home, school, and community;

"(5) The mental and physical health of all persons involved in the situation."

competent, credible evidence to establish that the requirements of R. C. 3109.04(B) and (C) were satisfied.

In reviewing the evidence, we find that there was competent, credible evidence from which the trial court could have concluded that a change in the circumstances of the children or custodian had occurred since the prior custody decree. R. C. 3109.04(B). Within less than a year, the children were moved three times before they finally settled in Horse Shoe, North Carolina. At the original dissolution hearing, Judge Drennen warned appellant that the separation agreement did not prevent appellee from moving the children out of the state. Appellant acknowledged this, and thus the initial move did not establish a change in circumstances, but even the Court of Appeals found that the evidence of the two additional moves while in North Carolina established a change in circumstances.

Concerning other elements and factors of R. C. 3109.04, the Court of Appeals was specific in finding that there was no evidence that the children's health or development was endangered by their environment (R. C. 3109.04[B][3] ), and that there was no evidence that the children "encountered difficulties in their interactions with their mother or their stepfather, or that the children were not adequately cared for." R. C. 3109.04(C)(3). Essentially, the Court of Appeals found that there was no evidence to support replacing the initial custodian or that the best interests of the children were in jeopardy. A finding that there was no evidence does not involve weighing the evidence, and we will review the record to determine whether there is any evidence in support of the prevailing party. See *Palladino* v. *Palladino* (1971), 27 Ohio St. 2d 175, 176; *Foster, supra; State, ex rel. Kobelt, supra.*

We have reviewed the record of the instant cause and are of the opinion that the record does contain some evidence that the children's environment endangered their health and development, and that there was evidence of difficulties with their interactions with their mother and stepfather.

We agree with the trial judge's conclusion that movement from one town to another and one school to another was a traumatic experience for the children. More important than the physical shuffling was the effect the appellee generated by apparently secreting the children from the appellant. The

evidence shows that from the date of the dissolution until July 1978, the appellant was unaware of the children's whereabouts. Appellee never contacted appellant to let him know where the children were or let the court know where the support money could be sent. Appellee testified that she did not want or need the support money, yet she contacted a friend who told appellant that he could visit the children if he made his support payments. It was only after appellant hired a private investigator and ran a credit check that he located appellee in Horse Shoe, North Carolina. Communication between the two parents was then established and an agreement reached whereby appellant paid $2,800 (allegedly for support) so that the children could visit him.

The trial judge concluded that the children had the right to be with and see their father and that appellee's apparent secreting of the children and transferral of her hate for their father was affecting the children. He concluded that the younger child was nervous and insecure. According to the director of the day care center which the younger child attended upon his return to Pike County, the child's emotional insecurity or instability manifested itself in the form of a speech problem. After reviewing the evidence, we believe there is some competent, credible evidence that the apparent secreting and moving of the children did have an adverse effect on their mental and emotional health and development.

In determining the best interests of the child, the court considering a custody matter is instructed to consider all relevant factors, including the five listed in R. C. 3109.04(C). The record shows that the children displayed signs of tension, neglect and dependency when they saw and were with their father for the first time in almost a year. As stated above the younger child was very insecure and had developed a speech problem which appears to have been related to his emotional development. Since the time the children saw their father, they showed greater emotional security and stability. We believe that the trial judge could have reasonably concluded that the children were experiencing difficulties in their interaction or interrelationship with their mother and stepfather, or that they were having difficulty adjusting at home. Although not listed as factors, appellee's frequent moving and

apparent secreting of the children were relevant factors for consideration by the trial judge. Based on the foregoing, there was evidence for him to find that the best interests of the children were jeopardized by the moving.

Additionally, a very important consideration is the fact that Judge Drennen was the same judge who made the original custody order. As the trier of fact, he reviewed the witnesses' credibility and demeanor and based his decision upon what he heard and saw. In so doing, he was exercising discretion. See *Trickey* v. *Trickey* (1952), 158 Ohio St. 9, 13. This court has never stated that the judge in a custody matter is vested with absolute discretion. See *Palladino, supra; Baxter* v. *Baxter* (1971), 27 Ohio St. 2d 168, 172-173. The elements, standards and factors of R. C. 3109.04(B) and (C) have limiting effects upon the judge's discretion. However, in view of the above consideration we are reluctant to overrule the judge's determination.

After reviewing the record, we are of the opinion that all the essential elements of this cause were supported by some competent, credible evidence and that the trial court's judgment was not against the manifest weight of the evidence. *C. E. Morris, supra.*

Since there is evidence to support the requirements of R. C. 3109.04(B) and (C), we decline to review appellant's claim that Civ. R. 60(B)(4) should be applied.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER, HOLMES and DOWD, JJ., concur.