GARABRANDT, APPELLANT, *v.*
LUCAS COUNTY CHILDREN SERVICES
BOARD, APPELLEE.

(No. L-87-207—Decided
April 15, 1988.)

*Mary L. Brogan,* for appellant.
*Bruce D. McLaughlin,* for appellee.

HANDWORK, J. This is an appeal from a judgment entered by the Juvenile Division of the Lucas County Court of Common Pleas wherein the court granted permanent custody of Shelley, Erin and Tony Garabrandt to the Lucas County Children Services Board ("LCCSB") and permanently divested appellant, David Garabrandt, of his right to the children. Also divested of their parental right to these children were Brenda Garabrandt, the children's mother, and Donald Garabrandt, Brenda's husband. Brenda and Donald have not appealed from the court's judgment.

During the years Brenda Garabrandt was married to Donald Garabrandt, she gave birth to six children. The oldest three, who are not parties to this action, were fathered by her husband Donald. The youngest three, Shelley, born in 1981, Erin, born in 1982, and Tony, born in 1985, were all fathered by Donald's brother, David Garabrandt, appellant herein. Prior to April 1985, appellant never acknowledged these children as his own, did not contribute to their support and took no steps to intervene or find help for the children in spite of the fact that he was aware they were not properly cared for by Brenda and Donald.

LCCSB first became involved with this family in 1978 and worked extensively with Brenda, Donald and the children. In 1985 the court found it necessary to grant LCCSB emergency temporary custody of all six children, finding the children to be either dependent, neglected or physically and/or sexually abused.

A comprehensive reunification plan ("CRP") was implemented pursuant to R.C. 2151.412 in an attempt to reunite Brenda and her husband Donald with the six children. David Garabrandt, appellant, was not a part of the CRP since at this time he was not known by LCCSB to be the father of the three youngest children. Subsequently, Brenda Garabrandt filed a complaint against David Garabrandt to

determine the parentage of Shelley, Erin and Tony. In April 1985, David Garabrandt was determined to be the father of these three children.

A short time later, LCCSB filed a motion to change disposition: permanent custody for the purpose of divesting parental rights in all six children. Brenda, her husband Donald and appellant, David Garabrandt, were all named as parties to this action. The trial court entered a judgment permanently divesting Brenda, Donald and David of their parental rights. Appellant has timely appealed stating three assignments of error.

"Assignment of Error I. The trial court erred in divesting appellant of parental rights despite the fact that no CRP had been provided for him, thus violating his Fourteenth Amendment right to due process of law."

Appellant contends that he was denied his due process rights because he was not provided with a CRP pursuant to R.C. 2151.412 prior to the court's termination of his parental rights. R.C. 2151.412 requires LCCSB to prepare and put into effect a CRP after LCCSB has obtained temporary custody of abused, neglected or dependent children and before LCCSB may obtain permanent custody pursuant to R.C. 2151.414. The purpose of the CRP is to attempt to rehabilitate the family and reunite the abused, dependent or neglected children with their parents.

This appears to be a case of first impression in Ohio. A similar case, *In re Ball* (1982), 5 Ohio App. 3d 56, 5 OBR 152, 449 N.E. 2d 490, contained a similar fact pattern and is therefore helpful to this court in deciding the instant case. The *Ball* case involved a divorced, noncustodial father, who had maintained a continuing interest in his child since his divorce. Prior to termination of both parents' rights to their daughter, the custodial mother had been given a CRP by the social welfare agency, but the noncustodial father had not. The court held that this noncustodial parent must be given the opportunity to be reunited with his child through the use of a CRP before a social welfare agency could obtain permanent custody of his child.

However, the *Ball* case can be distinguished from the instant case. In the case *sub judice*, Brenda Garabrandt's husband, Donald Garabrandt, was assumed to be the biological father of all six children until April 1985. In reality, the biological father of three of these children was appellant, who had not acknowledged that the children were his until he was sued for paternity by their mother just weeks before the court granted permanent custody to LCCSB. Further, appellant in the instant case has not maintained a continuing interest in his children's welfare as was the case in *In re Ball, supra.*

In a situation such as this one, the burden of identifying the biological parentage of neglected, dependent and abused children must not be placed on the social welfare agency. A social welfare agency may assume that the biological parents of the children it deals with are who they appear to be unless some other individual steps forward and claims the children as his or her biological offspring.

In the instant case, appellant was aware that LCCSB had been involved with his children since their birth. When LCCSB obtained emergency temporary custody of these children in 1985, he did not come forward and identify himself as their father and request that he be reunited with his children. LCCSB became aware that appellant was the children's father only because the children's mother sued him for paternity. This is not the behavior of a man who is maintaining a continuing interest in his children nor

of a man who wishes to be reunited with his children.

We hold that where an unidentified biological parent does not voluntarily step forward and identify himself as the parent of abused, neglected or dependent children and request that he be reunited with the children, such a parent is not denied due process of law when he is not provided with a CRP pursuant to R.C. 2151.412 prior to the court's divesting him of his parental rights. If, however, it comes to the social welfare agency's attention, through a paternity suit or otherwise, and prior to the court's granting permanent custody to the social welfare agency, that a previously unidentified individual is the biological parent of the children, the social welfare agency must (as was done in the instant case) acknowledge the fact of the children's biological parentage and include said parent as a party to the permanent custody proceedings.

Based on the above analysis, we find appellant's first assignment of error not well-taken.

"Assignment of Error II. The trial court erred in permitting LCCSB to treat appellant differently than it did his brother, thus violating appellant's Fourteenth Amendment right to equal protection of the law."

The Equal Protection Clause of the Fourteenth Amendment is applicable to state actions which treat *similarly situated* persons differently. *Heath* v. *Westerville Bd. of Edn.* (S.D. Ohio 1972), 345 F. Supp. 501. Appellant claims that since he was treated differently than his brother Donald, in that Donald had a CRP and he did not, he has been denied equal protection of the law. However, appellant and his brother are not similarly situated. As was discussed under appellant's first assignment of error, *supra,* appellant is the father of three illegitimate children. He never voluntarily stepped forward to make his fatherhood known to LCCSB so it could plan and implement a CRP for him. On the other hand, appellant's brother was presumed to be the father of these children, he acknowledged that they were his and there was no way for LCCSB to know that these children had a biological father who was not the husband of their mother. Had appellant voluntarily stepped forward and claimed the children as his own, requested that he be reunited with them and shown some interest in their welfare, he would have been similarly situated with his brother and therefore entitled to a CRP.

We hold that an unknown father of illegitimate children is not denied equal protection when a social welfare agency does not give him a CRP where he fails to voluntarily make his relationship to the children known to the agency prior to termination of his parental rights.

Therefore, appellant's second assignment of error is not well-taken.

"Assignment of Error III. The verdict of the trial court was against the manifest weight of the evidence."

David Garabrandt argues that the trial court's decision was against the manifest weight of the evidence. Pursuant to App. R. 12(B), this court may reverse a judgment of a lower court if it finds that the judgment was against the manifest weight of the evidence. However, if there is some competent credible evidence to support the trial court's finding, this court will not overturn the judgment of the lower court. The appellate court is not to substitute its decision for that of the trial court. *Ross* v. *Ross* (1980), 64 Ohio St. 2d 203, 18 O.O. 3d 414, 414 N.E. 2d 426.

Upon an original adjudication that a child is abused, neglected or dependent, a court may terminate parental rights if it finds, pursuant to R.C.

122

2151.353(A)(4),[1] "* * * that the parents have acted in such a manner that the child is a child without adequate parental care, it is likely that the parents would continue to act in such a manner that the child will continue to be a child without adequate parental care if a reunification plan were prepared pursuant to section 2151.412 of the Revised Code, and the permanent commitment is in the best interests of the child."

The standard of proof in these cases must be at least by clear and convincing evidence. *Santosky* v. *Kramer* (1982), 455 U.S. 745.

The testimony in this case reveals an unusual set of facts. In 1980, David Garabrandt began having sexual relations with his sister-in-law, Brenda, who at all times was married to David's brother, Donald. This affair continued intermittently for five years and three children were born to the couple. Over the course of the five years, David was married ' and divorced, had sexual relations with several other women and became engaged to yet another woman, whom he now plans to marry. Brenda often told David he was the father of these three children yet David testified that he was never sure if they were his or not. He testified that he took no steps to determine whether he was the father because the one time he asked

Brenda if he could get a blood test, she refused.

Although over the years David has had contact with the children as a baby-sitter, he has never paid child support or intervened to help the children when he saw they were not being properly cared for by Brenda and Donald. In fact, Brenda testified that David has hit her children with a belt to discipline them while they were in his care. There was further testimony from a neighbor that David also hit her child with a belt when her child was visiting Brenda and Donald's home.

David never acknowledged the children as his own until Brenda brought a paternity action against him and he was adjudged to be their father. It was only after this adjudication that David evidenced any interest in raising these children as his own.

David now lives with his fiancee, Helen, and her two children. Since David has been living with Helen he has used a belt to discipline her two children, ages two and four. Helen testified that she does not sanction the use of a belt for disciplining except for "the big stuff" which she defines as a toddler running into the street. Since David has been living with Helen, LCCSB has been called to investigate a report that he was abusing Helen's children and Helen's neighbor testified that she can hear David screaming,

---

[1] R.C. 2151.353 is applicable to appellant rather than R.C. 2151.414 even though these children had been adjudged abused, neglected and/or dependent prior to the filing of the permanent custody complaint, a situation which normally requires application of R.C. 2151.414. However, in this case, the children's state of abuse, neglect and/or dependency had previously been determined only as to Brenda and Donald Garabrandt and not as to appellant, David Garabrandt. The permanent custody hearing was original as to David Garabrandt, as he had never been named a party to any prior court proceedings affecting these children and their parents' rights. Therefore, the disposition of the children as to David Garabrandt must be made pursuant to R.C. 2151.353. The trial court came to this same conclusion. The referee's report, adopted by the trial court, states: "The standard to be applied to David Garabrandt, the biological father of Shelley, Erin and Tony, is different because he was never provided with a CRP, and the complaint for permanent custody was original as to him."

cursing and hitting the children from three houses down the street.

David testified that he does not have sufficient income to support his three children at this time and that his parenting skills are poor. He further testified that he was willing to get a second job to supplement his income and to attend parenting classes if he is allowed to have custody of his children. Although it is appellant's intent to marry Helen and act as stepfather to her children, he expressed no intent to attend parenting classes to prepare himself for the task of raising these children. If appellant were granted custody the children's primary caretaker would be Helen. Appellant states that he wants his children because he loves them.

A psychological evaluation of David found him to have been an abused child who presently has low average cognitive functioning. David reported to the psychologist that he attempted suicide at age seven. The psychologist concluded that David has a poorly developed social conscience based on his affair with Brenda and his failure to intervene when he witnessed abuse and neglect of the children at Brenda and Donald's home. The psychologist further found that David has severe emotional problems, is depressed, has a negative self-concept, is easily frustrated and strikes out when he is under stress. Based on her evaluation of David, the psychologist stated he would be a poor candidate for raising his children and recommended that he not be given custody of them.

We find that there was sufficient competent, credible evidence from which the trial court could conclude that David was clearly and convincingly an unfit parent and that it was in the best interest of the children to terminate his parental rights. Therefore, appellant's third assignment of error is found not well-taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.

This cause is remanded to said court for further proceedings according to law. Costs assessed against appellant, David Garabrandt.

*Judgment affirmed*
*and cause remanded.*

RESNICK, P.J., and CONNORS, J., concur.