DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, which, among other things, granted a divorce to appellee, Mark Staten, Sr., allocated the parties' assets and liabilities and named Mark the residential parent and legal custodian of Mark Staten, Jr.("Marky"), born October 2, 1992.
Appellant, Natalie Staten, now known as Natalie Minkow ski, appeals that judgment and asserts the following assignments of error:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT WHEN IT AWARDED CUSTODY OF THE PARTIES' CHILD TO APPELLEE [MARK STATEN].
 "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ORDERED APPELLANT TO BE SOLELY RESPONSIBLE FOR THE DEBT TO BANK ONE RESULTING FROM THE REPOSSESSED AUTOMOBILE."
Appellee failed to file a brief; therefore, this court, in determining this appeal accepts appellant's statement of facts and issues as correct. See App.R. 18(C). Appellant and appellee were married on November 17, 1990. The couple resided in a house purchased by appellant shortly before the marriage. Subsequent to the marriage, the house was titled in both parties' names. Appellant's two children, Katie, then age one, and Chester, then age five, resided with the parties. Both appellant and appellee were employed outside the home, but shared equally in caring for the children. It is undisputed that appellee was a father to both Katie and Chester. After the birth of Marky, the parties continued to share caretaking responsibilities and functioned as a family. However, appellant and appellee began experiencing both marital difficulties and financial problems. Even though appellant earns approximately $32,000 per year and appellee earns $28,000 per year, they filed a bankruptcy action in 1992 thereby discharging most of their debts. Nonetheless, in 1996, they re-financed the mortgage on the marital residence in order to satisfy mounting marital debt.
On January 6, 1997, appellee left the marital residence, taking the children with him, and moved into his parents' home. He called appellant and told her that she could pick up Katie and Chester, but that he was retaining custody of Marky.
On January 8, 1997, appellee filed his petition for divorce asking the trial court to name him the residential parent and legal custodian of Marky. Appellant filed an answer and a counterclaim for divorce; she also asked to be named residential parent and legal custodian of Marky.
Over the next two months, and despite repeated demands by appellant for regular visitation, appellee refused to allow appellant to visit with Marky outside of his parents' home. Because she did not have a good relationship with appellee's mother, appellant only visited with her son a few times during this period. Katie and Chester were allowed to visit Marky in his grandparents home. Apparently, however, appellee's family upset Katie by calling her mother names and asking for information related to her mother. When questioned as to why he would not allow appellant to visit her son outside of his parents' home, appellee replied that he did not "trust" her.
In February 1997, a magistrate entered an order requiring the parties to mediate the question of the allocation of parental rights and responsibilities. Pursuant to the order, each of the parties was required to pay his or her respective monthly expenses. Appellant was required to make car payments on a motor vehicle available for her use but titled in both her name and appellee's name. According to appellant, she was unable to make these payments and Bank One, the lender, threatened to repossess the vehicle. Appellant found a purchaser for the vehicle; however, she testified that appellee refused to sign off on the title. Consequently, Bank One repossessed the car incur ring a marital debt in the amount of $3,271.68.
The parties subsequently entered into a mediated parenting agreement which essentially allowed Marky to live an equal amount of time with each parent. The agreement stated:
 "Effective 3/18/97, the parties will share Marky around Natalie's work schedule. When Natalie works on weekends she will have possession of Marky on Tuesdays at 6:30 p.m. through Thursdays at 11:00 a.m. Natalie will have daily contact with Marky for two (2) hours to be arranged between the parties."
The agreement also provided that Marky was to call the other parent on those days he did not see that parent. Appellant subsequently filed a motion for re-allocation of parental rights and responsibilities claiming that appellee failed to follow the agreement. On October 3, 1997, the trial court filed a judgment ordering the parties to alternate "possession" of Marky on a weekly basis. Each parent was also provided with the "right of first refusal" to babysit Marky when he was residing with the other parent. The court also ordered psychological evaluations of appellee and his girlfriend, appellant and her boyfriend, and Marky.
At trial, appellant testified that appellee frequently refused to comply with the court's order. Moreover, he would not allow appellant to speak to Marky on the telephone. Appellee also failed, on several occasions, to allow appellant to exercise her right of first refusal. When he was questioned concerning these issues, appellant replied, "I don't know.", "I don't remember." or stated that appellant failed to provide him with enough "notice." In his report, the psychologist, Mark S. Pittner, Ph.D., found no major concerns regarding any of the adults and Marky. He did, however, recommend a shared parenting arrangement with appellant as the residential parent in order to maximize Marky's time with his half-siblings. The court counselor initially recommended a shared parenting agreement, but, after appellee failed to comply with the mediated parenting agreement, he recommended that appellant be named residential parent and legal custodian of Marky. Although both parents expressed a desire to enter into a shared parenting arrangement, they were never able to agree as to its terms.
In May 1997, appellant vacated the marital residence returning any rented furniture, for example, the dining room set, and taking most of the remaining household goods with her. When appellee and Marky moved into the residence, appellee forged appellant's name to a joint check from the re-financing proceeds in the amount of $2,643 and deposited that check in his bank account. He used some of the funds to purchase household goods and pay housing expenses left unpaid by appellant during her residence in the marital home.
On September 28, 1998, the trial court filed its decision on the disputed issues in this case and ordered appellee's trial counsel to prepare a proposed final judgment entry. Final judgment naming appellee residential parent and legal custodian of Marky was filed on December 9, 1998. That judgment also allocated the marital property between the parties. The court found appellant was solely responsible to Bank One for the value and costs of repossession of the motor vehicle formerly titled in both parties' names. This appeal followed.
In her first assignment of error, appellant contends that the trial court erred in awarding custody of Marky to appellee. In Ohio, the appropriate standard of review in custody cases is abuse of discretion. Pater v. Pater (1992), 63 Ohio St.3d 393,396. Abuse of discretion is defined as more than a mere error of law or judgment. It implies that the lower court's attitude in reaching its judgment was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
The statutory law governing the allocation of parental rights and responsibilities is R.C. 3109.04. R.C. 3109.04(B)(1) requires a trial court to consider the best interest of the child when making an award of custody incident to a divorce proceeding.Mohrman v. Mohrman (1989), 57 Ohio App.3d 33, 34. If relevant, the factors a court must consider when determining the best interest of the child include, but are not limited to:
"(a) The wishes of the child's parents regarding his care;
 "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to his home, school, and community."
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or house hold that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1).
In his decision, the domestic relations judge discussed each of the factors in R.C. 3109.04(F)(1) and made factual findings as to each factor. Essentially, appellant contests some of those factual findings. A reviewing court will not reverse factual findings entered by a trial court that are supported by some competent, credible evidence. Pacific Natl. Bank v. Roulette
(1986), 24 Ohio St.3d 17, 20; Ross v. Ross (1980), 64 Ohio St.2d 203,205; James v. James (1995) 101 Ohio App.3d 668, 684. Thus, our task is to determine whether the trial court's findings as to the challenged best interest factors are supported by competent, credible evidence.
Appellant first addresses the factor found in R.C.3109.04(F)(1)(c), asserting that, in his September 1998 decision, the trial judge failed to properly consider Marky's relationship with both of his parents and his siblings. She also argues that the court's findings appear to be punitive in nature. We agree.
In its decision, the trial court notes that the children were raised "like brothers and sister" and that appellee had "parental-like" contact with appellant's children. However, the court then goes on to determine, in essence, that, due solely to the actions of appellant, neither she nor Katie and Chester visited Marky for two months after appellee's departure from the marital residence. This determination is not supported by competent, credible evidence. The record reveals that appellee refused to allow appellant to visit with her child except upon his terms, that the children did visit with Marky and that appellant took appropriate steps to remedy the situation. The record does present evidence of the fact that Marky had a strong family relationship with his mother, his father and his siblings and that his interaction with his mother, brother and sister continued during the course of the divorce proceedings. Appellant testified that Marky had his own bed in a room he shared with his brother. Her major concern was continuing the same family bond with his half-siblings that he had always experienced. Marky's psychological evaluations revealed that he had a good relationship with both parents. Thus, contrary to the court's finding, competent, credible evidence supports a finding that Marky's relationships with his mother, brother and sister are a fundamental factor in determining his best interest.
Appellant next argues that the trial court's findings with regard to the factor found in R.C. 3109.04(F)(1)(f) reveal that the court disregarded evidence in considering Marky's best interest in light of which parent is more likely to honor and facilitate the visitation and companionship rights approved by the court. Again, we must agree.
In his decision, the trial judge observed that this was a factor of primary concern and stated "[e]ach party conducted themselves in such a manner during these proceedings as to question their ability to abide by court orders generally, including court ordered visitation rights." The court then listed the failings of each parent during the course of the divorce. In doing so, the court recognized, inter alia, that appellee violated a court-ordered mediation agreement concerning the allocation of parental rights, turned off all of the utilities in the marital residence when he departed and forged a check made out to both parties during the pendency of the divorce. As to appellant, he observed that she violated the standard injunction issued in a divorce case by removing most of the household goods from the marital residence and disobeyed the court's order by failing to make payments on the vehicle titled in the parties' names. Inexplicably, the trial judge also found the fact that appellant had a flat tire and therefore delayed the hearing on this matter important enough to impinge on his decision as to which party would be more likely to honor court-ordered visitation. While finding that both parties caused concern as to honoring any court order granting visitation rights, the court found that appellee never directly violated an order of the court and thus would better honor court-ordered visitation rights. This finding is not supported by competent, credible evidence.
The evidence demonstrates that appellee did directly violate a court order by forging appellant's name to a marital asset, that is, a joint check, and retaining the proceeds for his own use. More importantly, the issue here is the best interest of Marky and a consideration of which parent will promote a continued bond with the nonresidential parent by honoring his or her right to visitation and companionship with this child. Thus, while a failure to follow court orders on issues other than visitation might have some probative value in this determination, evidence of a failure to foster the bond between parent and child during the pendency of a divorce is of far greater relevance. Evidence was offered to establish that appellant facilitated visitation between Chester and Katie and their natural father. Even though a shared parenting agreement was never entered into by the parties, appellant submitted such an agreement and was willing to share legal custody of Marky with appellee. On the other hand, appellee removed Marky from the home without informing appellant and refused to allow her to see the child for the next two months unless she agreed to his terms. Even after an agreement was formulated, he constantly interfered with appellant's right to be with or talk to her child. In short, appellee acknowledged the bond between Marky and his mother and siblings, but his actions during the course of the divorce proceedings disrupted those relationships. Accordingly, and despite the fact that appellant occasionally failed to cooperate with appellee as to the parenting arrangement, some competent, credible evidence was offered to establish that she would be more likely to honor court-ordered visitation.
None of the other relevant factors militates against a finding that it would be in the best interest of Marky to name appellant his residential parent and legal custodian. Consequently, the trial court's findings on the two factors discussedinfra were pivotal in the court's decision. We find that these findings are not supported by some competent, credible evidence. Indeed, we conclude that the contrary result is supported by some competent, credible evidence. Therefore, we hold that the trial court's attitude in reaching its judgment on the issue of the allocation of parental rights and responsibilities is unreason able, arbitrary or unconscionable. Accordingly, appellant's first assignment of error is found well-taken.
In her second assignment of error, appellant contends that the trial court erred in dividing the parties' marital assets by ordering her to be solely responsible for the debt to Bank One resulting from the repossessed motor vehicle.
A trial court is vested with broad discretion when fashioning its division of marital property. Bisker v. Bisker
(1994), 69 Ohio St.3d 608, 609. In the usual case, the law requires that the marital property be divided equally. See R.C.3105.171(C)(1). If, however, an equal division would produce an inequitable result, the property of the parties must be divided in such a way as the domestic relations court determines to be equitable. R.C. 3105.171(D); Baker v. Baker (1992), 83 Ohio App.3d 700,702.
This court, when reviewing a trial court's property division, must consider the distribution in its entirety under the totality of the circumstances. Jelen v. Jelen (1993), 86 Ohio App.3d 199,203. We cannot reverse the trial court's judgment absent an abuse of discretion, that is, unless the trial court's decision is unreasonable, arbitrary, or unconscionable. Booth v.Booth (1989), 44 Ohio St.3d 142, 144; Blakemore v. Blakemore,5 Ohio St.3d at 219.
In the present case, the parties had a deficit marital estate. Due to the re-financing of the marital residence, it has a stipulated value of $29,500, with no equity. While appellee was awarded the marital residence, he was also made responsible for the entire debt on that residence. The court ordered that the parties were equally responsible on their other marital debts, except for the debt incurred as the result of Bank One's repossession of the motor vehicle used by appellant. Viewing the trial court's allocation of responsibility for marital liabilities in its totality, we cannot say that the court abused its discretion in ordering appellant to pay the $3,271 owed to Bank One. Accordingly, appellant's second assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed in part, and reversed, in part. This cause is remanded to that court for the entry of a judgment naming appellant, Natalie Staten, now known as Natalie Minkowski, residential parent and legal custodian of Mark Staten, Jr., and a determination of appellee's visitation and companion ship rights. Appellant and appellee are ordered to pay the costs of this appeal in equal shares.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ MELVIN L. RESNICK, J.
PETER M. HANDWORK, J., MARK L. PIETRYKOWSKI, J., CONCUR.