OPINION
Plaintiff-appellant, David Duning, appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, denying his motion to modify parental rights and responsibilities. We reverse the trial court's decision.
Although never married, appellant and defendant-appellee, Ashley Streck, have one child together. Their son, James Tyler Streck Duning, was born on August 15, 1994. For a period of years, the parties operated under an informal agreement in which appellee was James' residential parent and appellant was afforded parenting time, roughly equivalent to the Warren County guidelines. Paternity was formally established in August 2000. At that time, the parties reached a full agreement as to the allocation of parental rights and responsibilities. Pursuant to an agreed entry filed August 18, 2000, appellee was designated the child's residential parent while appellant was awarded parenting time pursuant to Warren County guidelines. Appellant was also ordered to pay child support. The parties agreed to continue to share the responsibility of providing transportation for the child.
Unbeknownst to appellant, appellee had been planning a move to Seattle, Washington, where her former boyfriend, Bryan Roehl, was stationed with the U.S. Army. Although the two had separated for some time, they had apparently reconciled prior to August 2000. In July, appellee had applied for a job in Seattle with ATT Wireless and interviewed for the position sometime prior to the submission of the agreed entry. She received an offer of employment on August 16, 2000, and signed the offer on August 18, 2000, the same day that the agreed entry was filed. Appellee concealed this information from both appellant and the court. Approximately one week later, she informed appellant of her intent to relocate to the state of Washington with the parties' minor child. Appellant responded by filing a contempt motion and a motion to modify parental rights and responsibilities. The trial court temporarily restrained appellee from removing the child from Ohio.
After a hearing on the matter, the trial court rendered a decision, retaining appellee as the residential parent of the minor child, permitting her to move to Washington with the minor child, and granting appellant parenting time during holidays and summers. Appellant now appeals, raising two assignments of error.
Assignment of Error No. 1:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING PLAINTIFF-APPELLANT'S MOTION TO MODIFY PARENTAL RIGHTS AND RESPONSIBILITIES."
Under this assignment of error, appellant argues that the trial court abused its discretion in finding that a change of custody is not in the child's best interest. Appellant argues that, based on the evidence presented to the trial court, a change of custody is in the child's best interest. Appellant contends that appellee's relocation to Washington with her boyfriend would cause a "devastating disruption" in the child's life on account of the child's "deep-rooted and well-established ties" to family and friends in Ohio.
The judgment of the trial court in its allocation of parental rights and responsibilities will not be reversed absent an abuse of discretion. See, e.g., Davis v. Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260. An abuse of discretion connotes more than an error of law or of judgment; rather, "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
R.C. 2151.23(F)(1) provides that the juvenile court shall exercise its jurisdiction in child custody matters in accordance with R.C. 3109.04, which authorizes domestic relations courts to allocate parental rights and responsibilities for the care of minor children. The modification of a prior decree allocating parental rights and responsibilities is governed by R.C. 3109.04(E)(1)(a), which states in part that: "[t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child."
A predicate to modifying a prior allocation of parental rights and responsibilities is a change of circumstances. R.C. 3109.04(E)(1). Although not explicitly stated in its decision, it is apparent that the trial court found that such a change of circumstances had occurred, as evidenced by its discussion of factors relating to the child's best interest. We agree that a change of circumstances had occurred in that appellee proposed to move across country with the minor child, separating him from his father and extended family. See Clontz v. Clontz (Mar. 9, 1992), Butler App. No. CA91-02-027. Additionally, appellee's proposed move was unknown to the trial court at the time of the prior decree. See R.C. 3109.04(E)(1)(a).
Although R.C. 3109.04(E)(1)(a) requires that the trial court find a change of circumstances before the court modifies the allocation of parental rights and responsibilities, such a finding in and of itself, does not demand a modification. Pryer v. Pryer (1984),20 Ohio App.3d 170, 171. Rather, the modification must also be in the best interest of the child and may not be made unless one of the conditions enumerated in R.C. 3109.04(E)(1)(a)(i), (ii), and (iii) applies. See id.
The primary concern in a child custody case is the child's best interest. Miller v. Miller (1988), 37 Ohio St.3d 71, 75. The child's best interest is to be determined by considering all relevant factors, including those enunciated in R.C. 3109.04(F). Birch v. Birch (1984),11 Ohio St.3d 85.
After a thorough review of the record, we find that the trial court abused its discretion in concluding that it was not in the child's best interest to modify the prior allocation of parental rights and responsibilities. This court has repeatedly upheld trial court decisions finding that a similar cross-country move would not be in the best interest of the child. See, e.g., Kubin v. Kubin (2000),140 Ohio App.3d 367; Hunter v. Hunter (Aug. 10, 1992), Madison App. Nos. CA91-10-031, CA91-11-034; Clontz v. Clontz (Mar. 9, 1992), Butler App. No. CA91-02-027. While these decisions do not mandate a holding that the trial court abused its discretion in this case, we find that the record and the factors set forth in R.C. 3109.04(F)(1) demand such a holding. In so holding, we are mindful of the significant discretion accorded trial courts in custody matters. However, we note that this discretion is not unlimited. Ross v. Ross (1980), 64 Ohio St.2d 203.
The factors relevant to this case that the trial court must have considered in accordance with R.C. 3109.04(F)(1) are: "(c) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to the child's home, school, and community; (e) the mental and physical health of all persons involved in the situation; (f) the parent more likely to facilitate court-approved parenting time rights or visitation in the future; * * * (j) whether either parent has established a residence or is planning to establish a residence outside the state."
Based on the record and all relevant factors, including the above factors in R.C. 3109.04(F)(1), we find that the trial court abused its discretion in determining that a change of custody was not in the child's best interest. The relevant factors and the record indicate that a change of custody is in the child's best interest. Other than appellee, all of the child's relatives continue to reside in southwest Ohio. Many of these relatives have taken an active role in the child's life. Appellee's decision to relocate to Washington with her boyfriend would undoubtedly have an adverse effect on the child's relationships with appellant and these other Ohio family members. This adverse effect is relevant to R.C. 3109.04(F)(1)(c) and (e). Appellee's relocation would greatly reduce the child's interaction with appellant and many supportive relatives in Ohio, and would have a negative impact on the child's mental and emotional well-being.
At the October 2000 hearing and the January 2001 hearing, the trial court heard much testimony regarding the child's relatives in southwest Ohio and their relationships with the child. Appellant, though he and appellee never married, has been involved in the child's life since the child's birth, as have the paternal and maternal grandparents. Appellant has never been separated from the child for more than a few weeks. Appellant currently lives with his wife in Lebanon, Ohio. All the parties involved concede that appellant is a good father to the child.
The child's paternal grandparents also live in Lebanon and have had substantial and continuous contact with the child. For the first three years of the child's life, the child stayed with his paternal grandparents at least once per week. After appellee moved to Columbus in 1997, the child usually stayed with his paternal grandparents for at least one night during appellant's visitation time.
The child also has had significant contact with his maternal grandparents. The maternal grandfather resides in Lebanon, while the child's maternal grandmother lived in Springfield, Ohio before her recent death from cancer. The child also has a playmate in Lebanon with whom he has spent much time. Prior to appellee's relocation, the child knew no one in Washington other than appellee and appellee's boyfriend.
The trial court largely based its decision on the fact that appellee has been the child's primary caregiver throughout the child's life. It is clear from the record that appellee has a strong bond with the child and, by appellant's own admission, appellee has done an admirable job parenting the child. Also, the fact that appellee has been the child's primary caregiver is a relevant factor to be considered. See Seibert v.Seibert (1990), 66 Ohio App.3d 342, 346. However, in this case, that factor alone cannot support a finding that the trial court acted within its discretion. Given appellant's demonstrated commitment to the child, the mother's commitment to move to Washington, the child's supportive environment in southwest Ohio, and the harm appellee's relocation would do to the child's relationships with appellant and his other relatives there, a change of custody is in the child's best interest.
The trial court also based its decision on the recommendation of a psychologist appointed by the court, Dr. Kuehnl-Walters. Though the report itself is not in the record, the trial court discussed the report's conclusions in its entry. Dr. Kuehnl-Walters appears to have based her best interest determination largely on appellee's strong bond with the child and the fact that appellee has been the child's primary caregiver.
We find that this report was given undue weight by the trial court. Due to appellee's imminent relocation, the trial court had ordered a "very quick psychological evaluation" to aid it in determining which parent should be awarded temporary custody in October 2000. According to appellant, Dr. Kuehnl-Walters spent no more than 40 minutes with him, and only about 15 minutes observing appellant's interaction with the child. At the conclusion of the October 2000 hearing, the trial court awarded temporary custody to appellee in Washington. The record does not show that any further psychological evaluations were conducted prior to the January 2001 hearing.
Additionally and importantly, we are deeply troubled by appellee's misleading conduct in hiding her intentions to move to Washington. Though she had taken steps to relocate prior to signing the August 18, 2000 agreed entry regarding visitation, she did not reveal to the trial court or appellant her intent to relocate until after she had signed the entry. She indicated in her deposition testimony that she did not decide to relocate until August 19 or August 20, while in fact she had accepted ATT's employment offer in Washington on August 18. She admitted at the October 2000 hearing that her deposition testimony was false. Given her fraudulent conduct, it seems evident that she will not be forthright and cooperative with the court and appellant regarding future visitation and custody matters. Such conduct implicates R.C. 3105.04(F)(1)(f).
Unfortunately, this action does not come to us by way of a motion for relief from judgment under Civ.R. 60(B)(3) as a fraud by one party against another party and the court. Rather, it comes to us by way of a motion to modify a prior order on the basis of a change of circumstances since that order. In this case, there was a fraudulent concealment of circumstances. Regardless, Civ.R. 60(B)(3) is not before us.
Based on the foregoing discussion, we find that the trial court abused its discretion in determining that a change of custody is not in the best interest of the child. The evidence in the record and the relevant factors indicate that a change of custody is in the child's best interest. Additionally, we find that the harm likely to be caused by the child's change in environment is outweighed by the advantages of the change in environment to the child. See R.C. 3109.04(E)(1)(a)(iii). Clearly, the child's relationship with appellee will be affected by a change of custody. However, the supportive environment provided by appellant, relatives, and friends in the Lebanon area outweighs any harm to this relationship.
Thus, the trial court abused its discretion in denying appellant's motion to modify the prior order regarding parental rights and responsibilities. Appellant's first assignment of error is sustained. Appellant's second assignment of error regarding the trial court's consideration of the psychological report is now moot. Even assuming the trial court's consideration of the report was proper, we reverse its decision. We hereby designate appellant as the child's residential parent. Appellee shall have the visitation afforded to appellant in the trial court's May 16, 2000 order.
Judgment reversed.
VALEN, J., concurs.
WALSH, P.J., dissents.