[Cite as *Galinis v. Galinis*, 2017-Ohio-7831.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOSEPH R. GALINIS | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellant | |
| -vs- | Case No. 2017CA00020 |
| CHRISTINE M. GALINIS | |
| Defendant-Appellee | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2015DR00885 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | September 26, 2017 |
| APPEARANCES: | |

| For Plaintiff-Appellant | For Defendant-Appellee |
|---|---|
| JEFFREY R. JAKMIDES<br>325 East Main Street<br>Alliance, Ohio 44601 | JASON P. REESE<br>101 Central Plaza South<br>Suite 1003<br>Canton, Ohio 44702 |

*Hoffman, J.*

{¶1}   Plaintiff-appellant Joseph R. Galinis ("Husband") appeals the January 24, 2017 Judgment Entry entered by the Stark County Court of Common Pleas, Family Court Division, which overruled his objections to the magistrate's September 19, 2016 decision, and approved and adopted said decision as order of the court.  Defendant-appellee is Christine M. Galinis ("Wife").

STATEMENT OF THE FACTS AND CASE

{¶2}   Husband and Wife were married on June 18, 1994.  Three children were born as issue of the marriage, two of the children are emancipated.  All three children live in the marital residence.

{¶3}   Husband filed a Complaint for Divorce on September 2, 2015.  Upon the filing of the Complaint, the trial court issued an Exhibit D Order which required the parties to deposit their paychecks into a joint account.  Husband filed motions to show cause on January 27, 2016, February 16, 2016, and March 23, 2016.  In each motion, Husband alleged Wife was making unauthorized withdrawals and stealing marital funds.

{¶4}   The magistrate conducted a final divorce hearing on April 19, 2016, and June 28, 2016, during which he also heard Husband's motions to show cause.

{¶5}   The following evidence was presented at the hearing.

{¶6}   Husband owns one half of Aspen Homes, Inc., an S corporation.  His brother owns the other half. Aspen Homes is in the business of residential construction. Aspen showed an annual loss of approximately $20,000/year during the last two years. According to Social Security records, Husband earned $37,200.00, in 2015.  Between

2004, and 2012, Aspen consistently paid dividends. Aspen paid $15,000.00, in dividends in 2012.

{¶7} Wife works for the Marlington Public School District as a teacher. Wife worked part-time prior to the 2014-2015 academic year, during which she became full-time. Wife's income was $33,516.00, in 2012, and $37,921.00, in 2013. Her W-2 wages for 2015 were $55,851.00.

{¶8} The parties agreed to the appraiser's valuation of $265,000.00, of the marital residence situated on 25.83 acres located at 15545 Georgetown Road, Minerva, Ohio. Wayne Savings Bank holds the mortgage on the property with a balance of $194,314.00, as well as a home equity line of credit with a balance of $16,461.00. The equity in the marital residence was $54,225.00.

{¶9} Wife drives a 2015 Ford Focus, which is titled in her name. Wife's vehicle was valued at $12,944.00. Husband has a 2006 Ford truck which he uses for business and pleasure. The truck was valued at $4,208.00. Husband also has a 1999 TC 29 New Holland tractor, valued at $8,000.00; a 2000 Polaris Scrambler ATV, valued at $3,000.00; and a 2006 Yamaha Warrior, valued at $1,500.00.

{¶10} The parties had joint bank accounts at First Merit and Huntington. They had equal access to these accounts. When the trial court issued the Exhibit D Order, it did not specify into which joint account the parties were to deposit their paychecks. Wife's pay was directly deposited into the Huntington account. Wife paid the household bills and her credit cards from the Huntington account. However, in December, 2015, she began transferring the remaining funds into the First Merit account. Husband opened a

personal account in January, 2016, and completely stopped depositing his paychecks into the joint accounts after February 16, 2016.

{¶11} In December, 2015, Husband wrote a check for $1,000.00, on the Huntington account, which resulted in an overdraft. Wife covered the overdraft by transferring funds from the First Merit account. Husband wrote a $900.00 check on the First Merit account which resulted in three overdraft charges. On January 9, 2016, Wife wrote a check to herself for $9,800.00, from the First Merit account. Wife applied those funds to the Wayne Savings home equity line of credit. The $9,800.00 was part of the insurance proceeds the parties received after Husband's 2006 Chevrolet truck was totaled. The parties originally had used the Wayne Savings line of credit to purchase the totaled vehicle. The balance of the insurance proceeds remained in the First Merit account.

{¶12} Throughout the proceedings, Husband and Wife each used their credit cards and made payments in excess of the minimum payments as required by the Exhibit D Order. The parties failed to keep receipts to substantiate their expenditures from the joint accounts.

{¶13} The magistrate issued his decision on September 19, 2016. The magistrate denied all of Husband's motions to show cause. The magistrate awarded the marital residence to Husband as he operated his business from the home and the adult children who were attending college resided with him. The magistrate found an award of spousal support to either party would not be reasonable or appropriate. Likewise, the magistrate determined an award of child support would be unjust, inappropriate, and not in the best interest of the child. With respect to the parties' retirement benefits, the magistrate

awarded Husband 10% of the marital portion of Wife's STRS account. The magistrate based the award on the fact Husband "received virtually all of the marital assets including his interest in Aspen" and the fact the trial court "offset the marital portion of his social security account against WIFE's STRS account." Magistrate's Decision at 14.

{¶14} Husband filed objections on September 30, 2016. Via filed January 24, 2017, the trial court overruled Husband's objections, and approved and adopted the magistrate's decision as order of the court.

{¶15} It is from this entry Husband appeals, raising the following assignments of error:

I. THE MAGISTRATE'S FINDINGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO THE TESTIMONY PROVIDED AT TRIAL, AND INCLUDED ERRORS OF FACT.

II. THE MAGISTRATE MISAPPLIED THE LAW IN TERMS OF AN EQUITABLE DISTRIBUTION OF THE MARTIAL [SIC] PROPERTY.

I

{¶16} In his first assignment of error, Husband contends the magistrate's findings were against the manifest weight of the evidence, contrary to the testimony adduced at trial, and included errors of fact. We disagree.

{¶17} When reviewing a trial court's decisions in a divorce proceeding, an appellate court will not reweigh the evidence introduced in a trial court, but will uphold the findings of the trial court when the record contains some competent evidence to sustain

the trial court's conclusions. *Fletcher v. Fletcher* (1994), 68 Ohio St.3d 464, 468. See also *Ross v. Ross* (1980), 64 Ohio St.2d 203, 414 N.E.2d 426.

{¶18} Husband argues the trial court failed to consider critical testimony in reaching its decision. Husband points to Wife's cross-examination during which she admitted she failed to abide by the trial court's Exhibit D Order. According to Husband, although Wife's testimony established she did not deposit her paychecks into the joint accounts, made unauthorized withdrawals, continued to use her credit cards, and made more than the minimum payments on her credit cards, the trial court absolved Wife of any wrongdoing and overlooked "her willful violation" of the Exhibit D Order. Brief of Appellant at 9.

{¶19} As set forth, supra, in our Statement of the Facts and Case, the parties had two joint bank accounts, one at First Merit and the other at Huntington. They had equal access to these accounts. Wife's pay was directly deposited into the Huntington account from which she paid household bills and her credit cards. Wife testified, after Husband overdrew the Huntington account, she began using the First Merit account. Wife acknowledged writing a check to herself for $9,800.00, from the First Merit account on January 9, 2016. Wife testified she applied those funds to the Wayne Savings home equity line of credit. The $9,800.00 was part of the insurance proceeds the parties received after Husband's 2006 Chevrolet truck was totaled. The parties originally had used the Wayne Savings line of credit to purchase the totaled vehicle. The balance of the insurance proceeds remained in the First Merit account.

{¶20} Wife provided the trial court with a detailed accounting of where she expended the parties' joint funds, including assisting the adult children with their tuition.

Husband, on the other hand, wrote a check for $1,000.00, in December, 2015, and a second check for $900.00, without offering an explanation for these expenditures. Both of these checks resulted in the joint accounts being overdrawn. Husband stopped depositing his paychecks into the joint accounts in February, 2016. The parties each used their credit cards at will and paid more than the minimum payments each month.

{¶21} Husband also raises questions about Wife's commitment to the family by moving out of the marital residence during the pendency of the proceedings. Husband submits Wife's departure from the residence was a violation of the Exhibit D Order which required the parties to stay under the same roof.

{¶22} Wife offered detailed testimony about the tension in the home which existed while the parties remained together. Wife also testified, when she returned home, she would find no hot water, the garage doors disabled, and her clothes placed in the garage. Husband would stand over Wife while she slept. The atmosphere became unbearable for Wife.

{¶23} In light of the foregoing, we find the magistrate's findings were not against the manifest weight of the evidence and supported by the testimony.

{¶24} Husband's first assignment of error is overruled.

II

{¶25} In his second assignment of error, Husband asserts the magistrate misapplied the law in terms of an equitable division of marital property. Specifically, Husband argues the magistrate should have awarded him 50% of $138,234.38, which

represents the marital portion of Wife's STRS account, $276,468.75, less an offset of the marital portion of Husband's social security account, $138,367.72.[1]

**{¶26}** An appellate court reviews the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

**{¶27}** R.C. 3105.171(C)(1) states, "Except as provided in this division * * * the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section."

**{¶28}** The trial court awarded Husband marital property valued at $273,305.00, and Wife marital property valued at $261,766. Husband maintains, although the trial court acknowledged Aspen Homes had suffered an annual loss of approximately $20,000/year during the two years preceding the divorce, the trial court did not consider Husband's financial position and future earning ability when it divided the marital property. Husband adds the trial court's attempt to justify the distribution based upon his being awarded the

---

[1] When we calculate the difference between the marital portion of Wife's STRS account and the marital portion of Husband's social security account, we arrive at a figure of $138,101.03.

recreational vehicles was misplaced as the vehicles were required for the maintenance of the marital/business property.

{¶29} The trial court assigned a value of $12,500.00, for all three recreational vehicles. Assuming, arguendo, the trial court erroneously assigned the value of the recreational vehicles to Husband's total distribution, we find any error is harmless as he and Wife would receive virtually equal distributions if the value of the vehicles was reduced from Husband's award.

{¶30} As for the trial court assigning a value of $10,000.00, for Aspen Homes, we find such to be supported by the record. Husband assigned this figure as the value of Aspen Homes on his financial statement. Aspen Homes owned a building worth over $40,000.00. Husband pays the electric, cable, cell phones, house phone, garbage pick-up, home security, and vehicle expenses including some gasoline from Aspen Homes' accounts. These expenses total approximately $1,300.00/month. Further, despite showing losses over the two years preceding the parties' divorce, Aspen Homes began paying Wife $5,200.00/year for services for which she had not been paid in the past. The trial court clearly chose not to believe Husband's claims Aspen Homes was going bankrupt.

{¶31} Given the total distribution of marital assets to Husband, we find the trial court did not abuse its discretion in only awarding Husband 10% of the marital portion of Wife's STRS account.

{¶32} Husband's second assignment of error is overruled.

{¶33} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Hoffman, J.

Delaney, P.J. and

Baldwin, J. concur