OPINION.
Appellant Karen Rahe challenges the decision of the trial court to designate appellee David Rahe the residential parent of the couple's three children. The decision followed a trial in which both sides presented evidence and cross-examined witnesses. In her appeal, Karen (we use first names because the parties have the same last name) raises two assignments of error. In her first assignment, she claims that the decision of the trial court was against the manifest weight of the evidence because there was no competent, credible evidence to support it. In her second assignment, she claims that the court abused its discretion because there was no competent, credible evidence to support its decision.
A reviewing court must not reverse a trial court's award of custody unless it determines that the trial court's decision was an abuse of discretion.[1] According to the Ohio Supreme Court, a trial court abuses its discretion in a custody case when its decision is not "supported by a substantial amount of credible and competent evidence."[2] Because the trial court is able to view the demeanor, attitude, and credibility of each witness, we should not reverse an award of custody simply because we hold "a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court."[3] While a disagreement about credibility is not sufficient for reversal of a custody award, "[a] finding of error in law is a legitimate ground* * *."[4]
In allocating the parental rights of the parties, the trial court must consider the best interests of the children.[5] To determine the best interests of the children, the trial court must consider all relevant factors, including those set forth in R.C.3109.04(F)(1). In this case, the trial court made no findings of fact and conclusions of law, and none were requested. Accordingly, "if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with his judgment[,] the appellate court is bound to affirm on the weight and sufficiency of the evidence."[6]
In her first assignment, Karen claims that she was the only party who presented credible evidence. The record belies this contention. When we are reviewing challenges to credibility, we must defer to the trial court. This is because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."[7]
Here, the parties stipulated to several documents, including school reports of the three children, drug tests of the parents, a parenting-investigation report, and Karen's grading reports. There were also pictures of the children and Karen admitted into evidence. David, Karen and the parenting specialist testified. Several other witnesses testified on behalf of Karen.
David had been awarded temporary custody of the children. At issue now is the trial court's determination of the allocation of parental rights. David testified that the children were doing well in his care. The school reports bore this out. There was evidence, however, that the children had incurred a bad case of head lice, and that one of the children had received a sunburn while in David's care. David testified that, at some point, he had attended parenting sessions because of problems with the children. David testified that the sessions were helpful.
According to David, when the marriage began to disintegrate, he called several attorneys, and because of information he received, he started to "build a case" against Karen. He purchased marijuana for her. He testified that Karen used marijuana on a daily basis. He placed into evidence photographs he had taken of an open drawer of Karen's nightstand that contained marijuana and accompanying paraphernalia that he claimed belonged to Karen. He also testified that she drove a car containing the children while under the influence of marijuana. He denied smoking marijuana himself, although he told the parenting specialist that he had experimented with drugs while in high school.
According to David, Karen decided to return to school and started staying away from home. David took on more responsibility for the children. He believed that she was having an affair and smoking marijuana with her friends. David denied physically, emotionally, or mentally abusing Karen. At the time of the trial, David had been discharged from his job and was receiving unemployment compensation. He testified that he was challenging the termination as a wrongful discharge. David also explained that he was interviewing for a new position and had turned down two offers. He denied that Karen was the primary caretaker for the children from 1990 to 1997, although he admitted that he traveled frequently from 1990 through 1997.
Part of Karen's evidence consisted of her testimony and the testimony of her mother, a neighbor, a previous employer of David, and the employer's wife. The gist of their testimony was that Karen was a wonderful mother who spent time with the children as the primary caretaker, and that David was more distant in his relationship with the children. Karen admitted smoking marijuana seven or eight times during her marriage to David. She testified that he bought the marijuana, that he encouraged her to use the drug, and that he smoked it with her on the occasions that she had smoked. Karen's mother testified that she had observed bruises on Karen's arms. She stated that Karen was afraid of David. Once David called Karen's mother and told her that he had threatened to kill Karen, but that he did not mean it.
Karen described herself as the primary caretaker of the children and testified that David's participation as a parent was minimal. At the time of the trial, she attended school full-time and was successful. She testified that, during the marriage, David harassed her, would not let her sleep, and would restrain her in the bedroom with demands to talk about their relationship. He would grab and push her and threaten to kill her. During one incident, she called the police. According to Karen, she left the marriage and took the children because she was afraid of David. Karen also testified to David's inadequate care as the temporary custodian of the children, citing his inability to rid the children of lice and his failure to protect one of the children from a bad sunburn.
The parenting specialist testified that she had interviewed the parents and Karen's boyfriend, Anthony Fuchs, before completing her pre-decree parenting-investigation report. She recommended that David receive custody of the children.
According to the report, David "seems less concerned with acting in the best interest of the children than he is in proving his wife unfit." At the time of the report, however, David was "employed, financially stable, and maintaining a residence." His relationship with his children was relaxed and playful.
The report identified Karen as unstable, depressed and overwhelmed. She was living with her parents, had no immediate means of supporting herself other than student loans, and was attending school. It expressed concern about Karen using marijuana again and Karen's poor judgment in "involving her children in her relationship with Mr. Fuchs amidst her divorce of the children's father." According to the report, the relationship indicated that Karen took care of her own needs "without consideration to the adjustments of the children." The report described Karen as a dependent person and expressed concern about the allegation of sexual abuse made against Fuchs during his divorce and the lack of a release form from Fuchs to explore the allegation. The report indicated that the oldest child wanted to live with Karen, but that the children were attached to both parents.
At trial, the parenting specialist was questioned about changes that had occurred since she had written the report. She admitted that some of the changes would raise concern. She testified that Karen had no plan as to how she would care for the children, had moved three times since the separation, and was involved in a questionable relationship. According to her, Karen had not focused on how she would support the children.
The parenting specialist was concerned about allegations made during Fuchs's divorce that he was sexually inappropriate with his daughter. Fuchs told her that the allegations were untrue. He signed a blank release form, but it was sent to the wrong office. The specialist requested Fuchs to send another release. She did not receive one.
The specialist said that her recommendation would not change because she had not reviewed the changes indicated by the attorneys, but she did state that the changes raised enough concern for her to re-evaluate the case. She also testified that it would concern her to learn that Karen had moved to a mobile home located in Fuchs's backyard.
Karen's first argument focuses on the credibility of David's testimony, listing instances in which he contradicted himself and the fact that he was intent on building a case against Karen. Issues of credibility are best left to the trial court, which can observe the witnesses, and not a reviewing court, which is limited to a cold record. Thus, we will not overrule the trial court's credibility determinations.
Karen next argues that all the competent, credible evidence supports a determination that she be granted custody. As part of that argument, she claims that the parenting specialist's report was outdated. This was because David had lost his job, and there had been visitation conflict and communication problems since the report was finalized. While the parenting specialist indicated that, before she would change her recommendation, she would need to re-evaluate the situation, neither party requested a re-evaluation between September 8, 1998, and July 21, 1999, the date the specialist testified.
Further, under these facts, the occurrence of some changes since the report was written did not by itself render the report incompetent. The parenting specialist was concerned about Karen being dependent, that she had not made provisions to care financially for the children, and that she had failed to provide them with a stable home environment. At the time of the trial, Karen still was not working. She had not made plans to provide for the children beyond those she had expressed to the parenting specialist initially. Further, she had moved physically closer to her boyfriend and farther away from the children's neighborhood. (This in spite of the trial court's order that the children have no contact with Fuchs.) Karen was dependent on Fuchs to supply a free place for her to live. While David had lost his job since the report, there was evidence that he still lived in the family home and was in the process of interviewing for a new position. Based upon the record, we conclude that while there was evidence demonstrating that Karen was a good mother, there was also sufficient competent, credible evidence to support the trial court's conclusion that it was in the best interests of the children to grant David custody. We overrule Karen's first assignment.
In her second assignment, Karen argues that the trial court's decision was an abuse of discretion. Having reviewed the record and made the determination that the trial court's decision was supported by sufficient competent and credible evidence, we cannot conclude that its custody decision was an abuse of discretion. Thus, we overrule Karen's second assignment. Accordingly, we affirm the trial court's judgment.
GORMAN, P.J., and SHANNON, J., concur.
Raymond E. Shannon, retired, of the First Appellate District sitting by assignment.
[1] See Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418,674 N.E.2d 1159, 1162.
[2] See id., quoting Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,550 N.E.2d 178, syllabus. (But in Mittendorf v. Mittendorf
[1998], 82 Ohio St.3d 397, 401, 696 N.E.2d 575, 578, a case involving the division of marital property, the same justice who authored Davis v. Flickinger stated that "if there is some
competent credible evidence to support the trial court's decision, there is no abuse of discretion," citing to Ross v. Ross [1980],64 Ohio St.2d 203, 414 N.E.2d 426, a modification-of-custody case, for the degree of competent, credible evidence.).
[3] See Davis v. Flickinger, 77 Ohio St.3d at 419,674 N.E.2d at 1163, quoting Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80-81, 461 N.E.2d 1273, 1276-1277.
[4] See id.
[5] R.C. 3109.04(B)(1).
[6] See Pettet v. Pettet (1988), 55 Ohio App.3d 128, 130,562 N.E.2d 929, 932.
[7] See Davis v. Flickinger, supra, at 418, 674 N.E.2d at 1162, quoting Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80-81, 461 N.E.2d 1273, 1276-1277.