OPINION
{¶ 1} Appellant, Terry L. Brannon, appeals from the May 21, 2003 judgment entry of the Trumbull County Court of Common Pleas, granting judgment in favor of appellee, the city of Warren, regarding appellant's claim for workers' compensation retaliation.
 {¶ 2} On June 11, 2001, appellant filed a complaint against appellee alleging that he was discharged from his employment in retaliation for filing a workers' compensation claim in violation of R.C. 4123.90. Appellee filed an answer on July 16, 2001.
 {¶ 3} A bench trial commenced on March 12, 2003.
 {¶ 4} The facts pertinent to this appeal are as follows: appellant was an Assistant Fire Chief for appellee and was employed with appellee since August 1981. According to appellant, he suffered neck injuries from an automobile accident which occurred on April 23, 1999. On December 10, 1999, appellant injured his neck, shoulder, and back, when he tripped over a fire hose while he was in the process of fighting a fire. On December 12, 1999, appellant submitted a claim for workers' compensation benefits, which was approved.
 {¶ 5} On September 19, 2000, Brian P. Brocker ("Dr. Brocker"), appellant's original physician, had a consultation with appellant. Based on Dr. Brocker's document, he was not informed by appellant of his involvement in the April 23, 1999 car accident. Dr. Brocker indicated that he no longer felt that appellant's condition was caused by the December 10, 1999 work injury.
 {¶ 6} In November 2000, appellee's representatives met with appellant and requested that appellant complete a medical release so they could review his medical records. Hearings before the Industrial Commission, scheduled for January 16, 2001, and March 1, 2001, were continued because appellant failed to submit his medical release until March 1, 2001.
 {¶ 7} After appellant returned his medical release, appellee scheduled appellant for an independent medical examination. Gary C. Cicero ("Cicero"), appellee's director of human resources, testified that he called appellant and left messages, however, appellant failed to return his calls. Cicero stated that appellee then sent appellant a letter, by regular mail, to his home address on March 29, 2001, advising him that an examination with Dr. Cardova was scheduled for April 10, 2001. Appellant testified that he received the letter and recognized that it was sent by appellee. However, appellant did not open the letter, wrote "return" on the envelope, and sent it back to appellee.[1]
 {¶ 8} According to Cicero, when appellee received its March 29, 2001 letter back, unopened, appellee decided to send appellant future mailings by both regular and certified mail. On April 4, 2001, appellee mailed its March 29, 2001 letter by both regular and certified mail. Appellant indicated that he did not open those letters and returned both unopened.
 {¶ 9} Prior to the scheduled medical examination with Dr. Cardova, Cicero testified that appellant's counsel's secretary contacted Cicero's secretary and informed her that appellant could not attend the April 10, 2001 medical examination because he had a conflicting medical appointment. On April 9, 2001, appellee notified appellant by both regular and certified mail that it had rescheduled an independent medical examination for April 20, 2001. Appellant returned both letters unopened. Appellee also sent letters by both regular and certified mail to appellant on April 9, 2001, requesting proof of the conflicting medical appointment and specifically warned appellant that failure to comply could result in disciplinary action up to and including discharge. Appellant returned both letters unopened.
 {¶ 10} On April 16, 2001, appellant's counsel submitted a letter indicating that he had made a mistake regarding appellant's conflict. Appellant's counsel stated that appellant did not have a medical appointment, but rather had a meeting concerning legal matters. According to Cicero, Jeff Younkins, appellant's union president, informed appellee that appellant had missed his April 10, 2001 examination with Dr. Cardova because he was at a meeting with the Ohio Civil Rights Commission ("OCRC").
 {¶ 11} On April 23, 2001, appellant testified that he went to Dr. Cardova's office and requested that he be able to tape record the examination, but Dr. Cardova refused, and appellant left. Cicero indicated that Dr. Cardova's office then contacted appellee and stated that appellant refused to submit to an examination unless he could tape record it or have a witness present.
 {¶ 12} On April 25, 2001, appellee sent appellant two letters, one by regular mail and one certified, requesting documentation of appellant's April 10, 2001 OCRC appointment by May 4, 2001. The letters specifically stated that failure to provide this information could result in disciplinary action up to and including discharge. Appellant returned both letters unopened. However, appellant stated that he did receive and read a copy of the April 25, 2001 letter from one of his representatives. Appellant stated that he was aware that he was ordered to provide documentation of his conflict and that Frederick Harris ("Harris"), appellee's Director of Public Safety and Service, refused to accept deviations from his orders from anyone other than appellant. Appellant did not contact appellee.
 {¶ 13} Cicero testified that on May 4, 2001, appellee sent appellant two letters, one by regular mail and one certified, notifying appellant that a pre-disciplinary hearing was scheduled for May 10, 2001. Appellant was charged with dishonesty, inefficiency, conduct unbecoming of an officer, and gross insubordination, all rising to gross misconduct. Appellant was advised of his right to representation by his union. Appellant returned both letters unopened. However, appellant stated that he received a copy of the notice prior to the pre-disciplinary hearing and was aware of the charges that were brought against him. Appellant testified that he knew that he could be terminated if he was found guilty of gross misconduct. Appellant failed to attend the May 10, 2001 pre-disciplinary hearing and indicated that he never contacted appellee to request either a continuance or union representation.
 {¶ 14} The pre-disciplinary hearing was held as scheduled on May 10, 2001. Appellee's representatives and representatives from appellant's union were present. Appellee found appellant guilty of the following: three counts of inefficiency for his failure to sign a medical authorization and failure to attend two separate medical examinations; three counts of conduct unbecoming of an officer for his failure to timely file a medical release, his nine refusals to accept mail from appellee, and his failure to properly communicate with Harris; and one count of gross insubordination for failing to comply with the direct orders of Harris pursuant to the April 25, 2001 letter. Appellee determined that appellant's three counts of inefficiency and three counts of conduct unbecoming of an officer arose to gross misconduct, and the failure to comply with Harris's direct order was itself gross misconduct.
 {¶ 15} On May 11, 2001, appellee informed appellant regarding his termination by letter, which was sent by both regular and certified mail. Appellant returned both letters unopened.
 {¶ 16} Pursuant to its May 21, 2003 judgment entry, the trial court rendered judgment against appellant's R.C. 4123.90 claim and in favor of appellee. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 17} "[1.] The [t]rial [c]ourt erred to the prejudice of [appellant] by finding that [appellee] could terminate [appellant] in addition to the remedies provided for in R.C.4123.651(C).
 {¶ 18} "[2.] The [t]rial [c]ourt erred to the prejudice of [appellant] by finding that any of the grounds set forth for [appellant's] termination were founded. All grounds found by the [t]rial [c]ourt were contrary to the manifest weight of the evidence. In doing so, the [t]rial [c]ourt erred in not finding that the termination of [appellant] was in retaliation for [appellant] filing a workers' compensation claim."
 {¶ 19} In his first assignment of error, appellant argues that the trial court erred by determining that appellee could terminate his employment. Appellant contends that appellee's exclusive remedy to address any alleged uncooperative acts is found in R.C. 4123.651(C).
 {¶ 20} R.C. 4123.651(C) provides that:
 {¶ 21} "[i]f, without good cause, an employee refuses to submit to any examination scheduled under this section or refuses to release or execute a release for any medical information, record, or report that is required to be released under this section and involves an issue pertinent to the condition alleged in the claim, his right to have his claim for compensation or benefits considered, if his claim is pending before the administrator, commission, or a district or staff hearing officer, or to receive any payment for compensation or benefits previously granted, is suspended during the period of refusal."
 {¶ 22} In Local 1985, Internatl. Bhd. Of Electrical Workersv. The Hoover Co. (C.A.6, 1996), 96 F.3d 1448, an employee had been receiving temporary workers' compensation benefits and was asked by her employer to submit to a medical examination. The employee failed to comply and was later terminated. The court held that while R.C. 4123.651(C) "might have served as a basis * * * for [the employer] to suspend [the employee's] temporary total disability benefits in the interim, it does not follow that the statute provides [the employer] its exclusive remedy, with the result that the [employer] was forbidden from terminating her for insubordination for refusing to be examined by a physician of the [employer's] choice." Id. at 6-7.
 {¶ 23} In the case at bar, appellant's reliance on R.C.4123.651(C) and Hoover, supra, is misplaced. Among appellant's numerous derelictions, he failed to submit to two separate medical examinations, as requested by appellee. Pursuant toHoover, even if R.C. 4123.651(C) is applicable, the statute does not provide appellee its exclusive remedy. As such, appellee was not forbidden from terminating appellant based on the evidence presented. Therefore, appellant's first assignment of error is without merit.
 {¶ 24} In his second assignment of error, appellant alleges that the trial court's decision was against the manifest weight of the evidence. Also, appellant stresses that the trial court erred in not finding that his termination was in retaliation for the filing of a workers' compensation claim.
 {¶ 25} Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223,226, states:
 {¶ 26} "* * * [J]udgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279 * * *, syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77
* * *. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v. Ross (1980), 64 Ohio St.2d 203
* * *." (Parallel citations omitted.)
 {¶ 27} R.C. 4123.90 provides, in pertinent part, that: "[n]o employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. * * *"
 {¶ 28} This court stated in Green v. Burton RubberProcessing, Inc. (Dec. 11, 1998), 11th Dist. No. 97-G-2102, 1998 Ohio App. LEXIS 5976, at 8-9, that:
 {¶ 29} "[a]n employee establishes a prima facie case for retaliatory discharge when the employee proves the following: (1) an injury on the job; (2) the filing of a workers' compensation claim; and (3) the employee's discharge in contravention of R.C.4123.90. Marsh v. Lincoln Elec. Co. (Apr. 4, 1997), [11th Dist. No. 96-L-052, 1997 Ohio App. LEXIS 1339, at 6-7]. Once the employee establishes a prima facie case for retaliatory discharge, the burden of going forward with evidence shifts to the employer to set forth a legitimate, nonretaliatory reason for the discharge. Kilbarger v. Anchor Hocking Glass Co. (1997),120 Ohio App.3d 332, 338 * * *. If the employer sets forth a legitimate, nonretaliatory reason for the employee's discharge, the employee must establish that the reason given by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Workers' Compensation Act. Id. While the burden of going forward with evidence may shift between the employee and the employer in these types of cases, the employee will always retain the ultimate burden of proof in an action filed under R.C. 4123.90."
 {¶ 30} In the instant matter, appellant established that in December 1999, he filed a workers' compensation claim in relation to an alleged work-related injury. However, appellant failed to prove by a preponderance of the evidence that he was discharged in contravention of R.C. 4123.90.
 {¶ 31} In its May 21, 2003 judgment entry, the trial court stated that "* * * the overwhelming evidence shows that there were legitimate, non-discriminatory grounds to terminate [appellant's] employment independent of his claim for benefits. Although all the grounds from termination are related to a workers['] compensation claim, the termination is not in retaliation. [Appellant's] total refusal to address the situation led to the termination." We agree.
 {¶ 32} Appellee set forth numerous legitimate, non-discriminatory reasons for its decision to terminate appellant. In particular, appellee showed that appellant took more than three months to complete and submit his medical release, which caused two separate hearings before the Industrial Commission to be continued. Appellee put forth evidence that appellant failed to submit to two separate independent medical examinations. Appellee also showed that appellant refused to accept appellee's many letters and failed to respond to a direct order that he communicate with Harris.[2] Further, appellee produced evidence that appellant failed to comply with several direct orders contained in Harris's April 25, 2001 letter. In addition, appellee showed that although appellant was aware of his pre-disciplinary hearing, neither he nor his representatives attended.
 {¶ 33} Thus, appellee terminated appellant because he engaged in conduct unbecoming of an officer, gross inefficiency, and gross insubordination, which amounted to three separate counts of gross misconduct. Each of these is a valid, legitimate, non-discriminatory and nonretaliatory reason. Pursuant toKilbarger, supra, the burden returned to appellant, who failed to establish that the reasons given by appellee were pretextual and that the real reason for the discharge was appellant's protected activity under the Workers' Compensation Act. Because the trial court's decision was supported by competent, credible evidence, there is no basis for this court to reverse. Therefore, appellant's second assignment of error is without merit.
 {¶ 34} For the foregoing reasons, appellant's assignments of error are not welltaken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Christley, J., Rice, J., concur.
[1] Although appellant did not open appellee's March 29, 2001 letter, he testified that he was aware that appellee had scheduled an independent medical examination for April 10, 2001, with Dr. Cardova. Appellant stated that he received the information either from his workers' compensation attorney or from his union president.
[2] Appellant attempted to demonstrate that Harris did not have the power to give appellant direct orders, despite the fact that Harris was in charge of appellee's entire safety department. However, we agree with the trial court that appellant's contention has no probative value with respect to appellant's claims under R.C. 4123.90.