[Cite as *Gartin v. Gartin*, 2012-Ohio-2232.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| MARY M. GARTIN nka CURE | : | |
| | : | Appellate Case No. 2011-CA-74 |
| First Petitioner-Appellant | : | |
| | : | Trial Court Case No. 2002-DS-77 |
| v. | : | |
| | : | |
| BRIAN W. GARTIN | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Second Peititioner-Appellee | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 18th day of May, 2012.

. . . . . . . . . . .

L. ANTHONY LUSH, Atty. Reg. #0046565, Rogers & Greenberg, LLP, 2160 Kettering Tower, Dayton, Ohio 45423-1001
        Attorney for First Petitioner-Appellant

ROBERT N. LANCASTER, JR., Pavlatos, Catanzaro & Lancaster, Co., L.P.A., 700 East High Street, Springfield, Ohio 45505
        Attorney for Second Petitioner-Appellee

. . . . . . . . . . . . .

HALL, J.

{¶ 1}    Appellant, Mary Gartin, now Mary Cure, is the mother of 12-year-old T.G.;

Appellee, Brian Gartin, is her father. T.G. is their only child together. After they were divorced

in 2002, the trial court's custody order made Mother the residential parent and gave Father visitation rights. In September 2011, the trial court modified this order by making Father the residential parent and giving Mother visitation rights. Mother challenges the custody modification. Because the trial court made the required statutory findings and did not abuse its discretion, we affirm.

## Procedural History

{¶ 2}  In October 2010, the trial court denied Father's motion for custody and entered a custody order. In May 2011, Father discovered that Mother was about to move an hour away from the Clark County area, where they both were living, to Lebanon, Ohio, to live with her boyfriend, John Haynes. Father moved for an ex parte order preventing the move and again moved for custody of T.G. The trial court entered an order prohibiting Mother from moving T.G. and scheduled a hearing. After a pre-hearing conference, the court appointed a guardian ad litem, ordering him to submit a written report and recommendation before the final hearing. For unstated reasons, the court also prohibited John Haynes from being with, or communicating with, T.G. After a non-evidentiary review hearing a week or so later, the trial court vacated the order prohibiting Mother from moving T.G. The court also modified the order regarding Haynes to allow T.G. to be in his presence when Mother is also present. The following month, Father moved to hold Mother in contempt, averring that she allowed T.G. to be with Haynes unsupervised.

{¶ 3}  The hearing on Father's custody motion was held over four August days. The guardian ad litem timely submitted a written report that recognized several problems associated with living with Mother but nevertheless recommended that she remain T.G.'s

custodial parent. Neither party called the guardian ad litem to testify. Those who did testify were Mother, Father, Andrew Cure (Mother's former husband),[1] Tracy Engel (T.G.'s counselor), John Haynes, and Stacy Haynes (John Haynes's soon-to-be former wife).

{¶ 4} On September 7, 2011, the trial court sustained Father's custody motion, making him T.G.'s residential parent. In its written decision, the court expressly found that Father's testimony and that of all his witnesses was mostly credible but that Mother's and Haynes's testimony was not. Regarding the guardian ad litem's recommendation, the court explained that, while it respected his opinion, he did not have the benefit of hearing the witnesses' testimony. The court also sustained Father's contempt motion, finding that Mother violated its order prohibiting T.G. from being with Haynes unsupervised.

{¶ 5} Mother timely appealed and now presents four assignments of error for review. The first three concern the custody modification. The fourth concerns the contempt holding.

### The Custody Modification

{¶ 6} "Courts are not permitted to modify custodial arrangements on a whim." *Masters v. Masters*, 69 Ohio St.3d 83, 85, 630 N.E.2d 665 (1994). Under the governing statute, R.C. 3109.04, a court may not modify the residential parent unless it finds that three things are true. One, the court must find that, since the prior custody order, the circumstances of the child or the child's residential parent have changed. R.C. 3109.04(E)(1)(a). Two, the court must find that the modification is in the child's best interest. *Id*. And three, the court

---

[1] Mother has a child with Andrew Cure. The child is the subject of another custody case that the trial court consolidated with the present case. This appeal concerns only her child with Brian Gartin.

must find that one of three statutory circumstances applies. *Id*. The trial court here made all three findings–all three of which Mother challenges.

**{¶ 7}** "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). For this reason, a reviewing court may not disturb a trial court's statutory findings unless it concludes that the trial court abused its discretion. *See Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraph one of the syllabus. The abuse-of-discretion standard in a custody case examines whether the award of custody is supported by "'a substantial amount of credible and competent evidence.'" *Id*. at 418, quoting *Bechtol v. Bechtol*, 49 Ohio St. 3d 21, 550 N.E.2d 178 (1990), at the syllabus. Under this standard, disputes about the facts, the weight accorded the testimony, and the credibility of witnesses are left to the trial court. *Bechtol* at 230. The question is whether evidence was presented that, if believed, supports trial court's findings. *See Ross v. Ross*, 64 Ohio St.2d 203, 204, 414 N.E.2d 426 (1980).

*The change-in-circumstances finding*

**{¶ 8}** The governing statute provides that a court may not modify a prior child-custody order "unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child [or] the child's residential parent." R.C. 3109.04(E)(1)(a). The trial court here determined that since its October 2010 custody order T.G.'s circumstances have changed in three ways: she now lives an hour away from where she had been living, she

now attends a different school, and she now lives with mother's boyfriend, John Haynes. Mother does not dispute that these changes occurred. Rather, in the first assignment of error, she contends that none is substantial enough to satisfy the statutory requirement. We disagree.

{¶ 9}   Regarding the fact that T.G. now lives with Haynes, Mother says that no evidence was presented showing any adverse effect on T.G. Instead, says Mother, the evidence shows just the opposite, that Haynes has a positive relationship with her. But to satisfy the statute the change need not have an adverse impact. Nor does the statute require the change to be substantial. In her brief, Mother quotes the Ohio Supreme Court's opinion in *Davis v. Flickinger* as holding that the change "'must be substantive, continuing, and have a materially adverse effect upon the child.'" (Brief of Appellant, p.12, quoting *Davis* at 417). But the quoted words are not the *Davis* Court's.   As the Court itself said, they are the words of Chief Justice Moyer from a decision that he wrote "while he was on the Tenth District Appellate Court." *Davis* at 417. The Court quoted the decision as an example of how Ohio appellate courts interpret the statutory phrase. The *Davis* Court, though, made it clear that interpreting the statutory language as requiring a substantial change imposes "a higher burden of proof than required by statute." *Id*. at 417-418. While the Court did not establish (and has not established since) a definitive interpretation of the change-in-circumstance language, it did say that "there must be a change of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change."*Id*. at 418.

{¶ 10}   Regardless, the nature of the change is not dispositive. Rather, the Court said that, "in determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all

issues which support such a change." *Id*. at paragraph two of the syllabus. The trial court here could have based its change-in-circumstances finding   solely on the fact that T.G. now lives with Haynes. The court had found that Haynes posed enough of a danger to T.G. to order that he not be alone with her. That she now lives under the same roof as Haynes is therefore not merely a slight or inconsequential change. That this constitutes a change of substance will become clearer as we review other evidence.

{¶ 11}   The first assignment of error is overruled.

*The best-interest finding*

{¶ 12} The governing statute further provides that courts must retain the residential parent designated by the prior custody order "unless a modification is in the best interest of the child." R.C. 3109.04(E)(1)(a). In making the best interest determination, the statute instructs courts to "consider all relevant factors," including the ten statutory factors in division (F)(1). In the second assignment of error, Mother contends that the trial court failed to properly analyze the best-interest factors. Again, we disagree.

{¶ 13}   Of the ten statutory factors, the trial court here found only the four factors in subdivisions (c), (d), (e), and (f) to be relevant. Mother agrees that all the other factors are irrelevant, save the one in subdivision (b). The factor in (b) concerns "the wishes and concerns of the child, as expressed to the court," "if the court has interviewed the child in chambers pursuant to division (B) of this section." R.C. 3109.04(F)(1)(b). The trial court did not interview T.G. in chambers.[2] Mother contends nevertheless that this factor favors her because

---

[2] Neither party asked the court to interview T.G. in chambers, nor did the trial court exercise its discretion to do so. *See* R.C. 3109.04(B)(1).

T.G.'s comments to the guardian ad litem and to her counselor show that she was happy about the move to Lebanon. But an in-chambers interview affords a unique setting in which a child feels (it is hoped) comfortable enough to express her true wishes and concerns, which the child may not otherwise do. Only if an in-chambers interview actually occurred is this specific factor relevant. In this case, the trial court correctly found that the factor as stated in R.C. 3109.04(F)(1)(b) is irrelevant.

{¶ 14} Of the factors that Mother agrees are relevant, the one in subdivision (c) concerns "the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest." The trial court found that T.G. has very close and loving relationship with both Mother and Father. She also has close, loving relationships with the members of both extended families, all of whom live in the area T.G. did before she moved. The court found that, because T.G. now lives an hour away, regular personal contact with her extended family is more difficult. Mother contends that the trial court ignored T.G.'s relationship with her 8-year-old half brother, A.C., who lives with them. (He is the child Mother had with Andrew Cure.) But Mother cites no testimony, or other evidence, that sheds light on T.G.'s relationship with A.C.

{¶ 15} The factor in subdivision (d) concerns "the child's adjustment to the child's home, school, and community." Mother cites testimony from T.G.'s counselor that T.G. was excited about moving to a new home, attending a new school, and making new friends. The trial court did not find that T.G. was having any difficulties adjusting to life in Lebanon.

{¶ 16} The factor in subdivision (e) looks at "the mental and physical health of all persons involved in the situation." The court said there was not enough evidence to determine

whether Mother or Father has physical or mental health problems that would significantly affect either's ability to parent T.G. But the court did find that Mother suffers from unresolved anger problems, relationship issues, and an overall lack of maturity. The court said that she views herself as confident and knowing, but comes across as arrogant and close minded, which the court said is not a good example for T.G. Haynes, the court found, suffers from a host of mental health problems–unresolved anger management issues, unresolved anxiety and depression, unresolved post-traumatic stress disorder, unresolved honesty issues, relationship issues, and overall behavioral problems.

{¶ 17} The final relevant statutory factor in subdivision (f) concerns which parent is more likely to honor and facilitate parenting-time or visitation rights. Mother says that there is no evidence that she has interfered with Father's parenting time and that there is evidence that she has tried to facilitate it. Mother contends that because the evidence establishes no record on this factor for Father the factor favors her. But the trial court found, based on her recent actions, that Mother is not likely to honor and facilitate court-ordered parenting or visitation rights. The court said that Mother has never intended to follow its orders. Citing T.G.'s counselor's testimony, the court found that Mother violated an order when she told the counselor not to tell Father about any of T.G.'s appointments. The court further found that Mother violated the custody order more than once by allowing Haynes to be with T.G. unsupervised. Also, the court said that, despite its urging, Mother has not helped T.G. have a healthy relationship with her father. Moreover, Mother, the court found, has disregarded the spirit of its order strongly suggesting that the parties communicate and cooperate for T.G.'s benefit.

{¶ 18} It appears that the most important factor in the court's decision was its concern for T.G.'s health and safety when she is in Haynes's and Mother's presence for extended periods of time. The court said that it was greatly concerned about Haynes's problems. Despite being a decorated sheriff's deputy with the Hamilton County Sheriff's Department, Haynes has the serious mental health problems listed above. The court noted that, though a divorce is pending, Haynes is still married. His soon-to-be former wife's testimony, which the court found credible, shows that he has all of the problems noted above. The court also found that Haynes is in arrears in his court-ordered temporary child-support payments. Mother, the court said, is attentive to T.G.'s needs as long as they do not conflict with her personal agendas. The court found that Mother's relationships with men have always been her priority and this has often caused her not to pursue T.G.'s best interest. The court found that Mother has experienced many failed relationships with men. Over the years, said the court, Mother has introduced men into her children's lives and subjected her children to disharmonious environments and her failed relationships. None of this, said the court, is good for T.G. Indeed, based on the counselor's testimony, the court found that a significant source of anxiety for T.G. is Mother's relationships. Once again, the court said, Mother has subordinated T.G.'s best interest to her desires, this time to her desire to establish a long-term relationship with Haynes. The primary reason for the move to Lebanon was not Mother's desire but because Haynes must live within a 30-mile radius of his workplace. Mother says there is no evidence that her relationships have harmed T.G. But the court found that the harm to T.G. is the instability they cause, which results in T.G.'s moving around to different places, attending different schools, and having Mother's boyfriends come and go from her life. The

court noted that T.G. is now living in her sixth different residence since the divorce and starting her third different school. The instability associated with mother, concluded the court, is not in T.G.'s best interest.

**{¶ 19}** The court found that Father offers more stability than Mother. Although he too has had his share of failed relationships, Father has been married to his current wife for about 7 years. The court found that their relationship is stable and consistent. The court also noted that Father has lived in the same house for about 8 years. While living with Father, said the court, T.G. has a greater opportunity to develop healthy relationships with friends, relatives, and others. Father, concluded the court, offers greater potential for T.G. to adjust to home, school, and community.

**{¶ 20}** All of the above findings are supported by the testimony given at the hearing. Together the findings constitute a sufficient basis on which the trial court could find that a change in residential parent is in T.G.'s best interest. We find no abuse of discretion in that determination.

**{¶ 21}** The second assignment of error is overruled.

*The change-of-environment finding*

**{¶ 22}** Finally, to modify a child's residential parent, one of the three statutory circumstances listed in the governing statute must apply. In this case, for the reasons given in its best-interest analysis, and based on all the evidence, the trial court found that "the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii). In the third assignment of error, Mother contends that the court failed to properly consider this weighing of the benefit and the harm likely to be

caused by a change of environment. We disagree.

**{¶ 23}** Mother points out that the guardian ad litem acknowledged many of these problems but still recommended that she remain T.G.'s residential parent. We see no reason to question the weight that the trial court gave to the guardian ad litem's recommendation. The trial court's finding that Father offers T.G. a more stable environment, an environment more conducive to her development and ability to thrive, provides an adequate basis on which the court could find that the advantages to T.G. of living with Father outweigh any harm. We find no abuse of discretion in that determination.

**{¶ 24}** The third assignment of error is overruled.

### The Contempt Finding

**{¶ 25}** The trial court also granted Father's contempt motion, finding that Mother violated one of its orders by allowing T.G. to be with Haynes unsupervised. In the fourth assignment of error, Mother argues that she did not violate the spirit of the order.

**{¶ 26}** Mother admitted that on two occasions she allowed T.G. to be alone with Haynes. At an amusement park, Mother let T.G. ride a roller coaster with Haynes while she waited for them. And on a trip to visit her family, she let T.G. ride alone with Haynes in his car while she followed in another vehicle. "The court that issued the order sought to be enforced is in the best position to determine if that order has been disobeyed." (Citation omitted.) *State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 252, 648 N.E.2d 1355 (1995). The discussion of the relevant law in Mother's brief states, correctly, that one must comply with both the letter and the spirit of an injunctive order. The trial court could have found that either of the above instances violated the letter of its order.

{¶ 27}   The fourth assignment of error is overruled.

{¶ 28}   All of the assignments of error are overruled. Therefore the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

L. Anthony Lush
Robert N. Lancaster, Jr.
Hon. Thomas J. Capper