[Cite as *Lowe v. Lowe*, 2020-Ohio-2743.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| CRYSTAL N. KOEN LOWE | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28627 |
| | : | |
| v. | : | Trial Court Case No. 2011-DR-995 |
| | : | |
| WALTER W. LOWE | : | (Domestic Relations Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of May, 2020.

. . . . . . . . . . .

DAVID E. STENSON, Atty. Reg. No. 0042671, 131 North Ludlow Street, Suite 316, Dayton, Ohio 45402
　　　　Attorney for Plaintiff-Appellant

WALTER W. LOWE, 212 Northwood Avenue, Apt. 1, Dayton, Ohio 45406
　　　　Defendant-Appellee, Pro Se

. . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Crystal N. Koen Lowe, nka Crystal Koen ("Koen"),[1] appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which terminated the parties' shared parenting plan and designated Walter W. Lowe ("Lowe") as the minor children's residential and custodial parent. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

**{¶ 2}** The parties married on February 14, 1995, and have five children together. When they divorced on February 14, 2013, four of the children were minors. The parties entered into a shared parenting agreement regarding their minor children. Under that agreement and the court's decree, the parties alternated annually (by school year) who would be the residential parent; the respective non-residential parent would have parenting time under the standard order of visitation. The parties resided in the same school district.

**{¶ 3}** On August 9, 2018, Koen filed a motion to terminate shared parenting. At that time, the parties had two minor children, who were then 12 and almost 14 years old. Koen asked to be named their residential parent. A magistrate held a hearing on the motion on April 23, 2019, during which both parties represented themselves and testified on their own behalf. The magistrate subsequently denied the motion to terminate shared parenting.

**{¶ 4}** Koen objected to the magistrate's decision; Lowe did not respond to the objections. On November 5, 2019, the trial court concluded that the magistrate had erred

---

[1] Koen identified herself at the April 23, 2019 hearing as "Crystal Koen" and stated that "Lowe" was her former name.

in failing to grant Koen's motion to terminate the shared parenting agreement. The court further found, however, that Lowe should be designated the residential and custodial parent for the minor children.

{¶ 5} Koen appeals from the trial court's judgment, claiming that the trial court "erred in adopting the magistrate's findings of fact and in its grant of residential custody to [Lowe]." Lowe did not file an appellate brief.

## II. Standard for Termination of Shared Parenting and
## Designation of Residential Parent

{¶ 6} R.C. 3109.04(E)(2)(c) permits a court to terminate shared parenting at the request of one or both parents if the court determines that shared parenting is not in the best interest of the child. "A change in circumstances is not required before terminating shared parenting." *Curtis v. Curtis*, 2d Dist. Montgomery No. 25211, 2012-Ohio-4855, ¶ 7.

{¶ 7} In determining whether shared parenting is the best interest of a child, the court shall consider: the ability of the parents to cooperate and make decisions jointly with respect to the children; the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent; the geographic proximity of the parents to each other and the practical considerations related to shared parenting; and the recommendation of the guardian ad litem of the child, if the child has a guardian ad litem. R.C. 3109.04(F)(2). Koen agrees with the trial court's determination that shared parenting was not in the best interest of the parties' minor children.

{¶ 8} After terminating a shared parenting agreement, the court must then issue a modified decree allocating parental rights "as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." R.C. 3109.04(E)(2)(d). *See also Blessing v. Blessing*, 2d Dist. Montgomery No. 27353, 2017-Ohio-2878, ¶ 17.

{¶ 9} Pursuant to R.C. 3109.04(F)(1), the trial court must consider all relevant factors in determining the best interest of a child with respect to custody and visitation, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) * * * [W]hether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense

involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; * * *

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

See also *Portis-Phillips v. Phillips*, 2d Dist. Clark No. 2016-CA-34, 2016-Ohio-7803, ¶ 19.

{¶ 10} "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Under the abuse-of-discretion standard in a custody case, "disputes about the facts, the weight accorded the testimony, and the credibility of witnesses are left to the trial court." *Gartin v. Gartin*, 2d Dist. Clark No. 2011-CA-74, 2012-Ohio-2232, ¶ 7, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). "The question is whether evidence was presented that, if believed, supports the trial court's findings." *Id.*, citing *Ross v. Ross*, 64 Ohio St.2d 203, 204, 414 N.E.2d 426 (1980). An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### III. Review of Trial Court's Custody Ruling

{¶ 11} In granting custody of the two minor children to Lowe, the trial court summarized the evidence as follows.

The parties have two remaining minor children, ["Daughter"], age 13, and ["Son"], age 15, neither of whom is doing well in school. [Lowe] is an over-the-road truck driver but testified that he tries to stay within five hours from home and only spend one night away. While [Lowe] is away, he testified that he relies upon his mother, an across-the-hall neighbor, and his two older children to supervise [Daughter] and [Son]. [Lowe] did not mention whether his mother, who lives ten miles away, comes to stay at his home with the children or is available by phone if the need arises, as [Koen] suggested. [W.L.] is the parties' oldest daughter and lives in Cincinnati. The nineteen-year-old son, [W.W.L.] frequently watches the younger children. [Koen] testified that a major source of concern for her is that [Lowe] is on the road much of the time and the teenagers are unsupervised. [Koen] testified that [W.W.L.] had a psychotic break due to ingesting drugs and alcohol while he was supposed to be supervising his minor siblings. She stated that [Lowe] allows that son to smoke marijuana at his house. When she tries to contact the children while they are at [Lowe]'s house, they do not respond, nor does [Lowe].

[Koen] believes that the children are doing poorly in school because of the lack of "continuity" while living with their father and his lack of support and follow through. She testified that he has not involved himself in their school issues and failed to recognize that neither child was doing well, that

she had to "start the ball rolling".

[Koen] testified that she believes that it is in the children's best interest to live with her because she is more consistent, has "the better household", and she can be more flexible and available for the children. With her, [Koen] testified that the children would not have to have different babysitters or family members supervising them. [Koen] denied having a significant other at the time of the hearing. She is a minister and stated that the children, when with her, are involved in the church.

Upon cross-examination, [Koen] testified that she had not had an intimate relationship with one, Leo Smith, who is associated with the church in Indiana. [Koen] stated that Leo Smith was charged with "incidents". When asked what kind of incidents, [Koen] responded, "It's usually drug trafficking, you know, different things." She stated that his record is "clear through Ohio".

[Lowe] testified that the shared parenting has not been "going as well as it used to." [Lowe] stated that [Koen] showed up at his apartment in a vehicle with bullet holes in it and that he has concerns about the children's association with Leo Smith, a felon.

[Lowe] testified that he is a truck driver, that if he goes out of town, it is only for one night, that he is back the next day. [Lowe] stated that his 13 year old, who is in 8th grade, read at a 3rd grade level the year before last when she was tested, but he doesn't know at what level she currently reads. He testified that [Daughter] was tardy 109 times during the school year she

was with her mother.

[Lowe] lives in a two-bedroom apartment while his house is being renovated from "squatters". He stated that he and the children get along well and participate in several activities together. He testified that he has not denied [Koen] parenting time. [Lowe] testified that [Koen] failed to re-register [Son] in Dayton Christian Academy which resulted in his being kicked out of Dayton Christian Academy and forcing him to go to Meadowdale High School. However, later in his testimony, [Lowe] states that the reason [Son] started at Meadowdale is because of the divorce, that he had to "relocate to get away… to save my sanity."

[Lowe] testified that he and [Koen] could cooperate under a Shared Parenting Plan if she goes to counseling first. He testified that she needs help, having made some "irresponsible decisions", one of which was to try to hit one of their sons with a car. [Lowe] claimed that Leo Smith had called him and told him that he, Leo, had had to stop [Koen] from beating the children. At some point, [Koen] went to jail, according to [Lowe], for attacking their oldest daughter. He does not feel that the children are [Koen]'s main priority and that she is hard to get "ahold of" any time there is an emergency. He feels that [Koen] has "so much built up anger that she is not willing to let go."

[Lowe] admitted to leaving [Daughter] at home alone for an hour or two after school until he gets home or one of her siblings comes home.

The parties argued over dates when each was allegedly denied

parenting time or took the children when it was not their parenting time.

{¶ 12} On appeal, Koen argues that the trial court erred in determining that the evidence regarding Leo Smith was relevant, in failing to conclude that Koen could better address the children's educational and childcare needs, and in finding that the statutory factors favored designating Lowe as the residential and custodial parent.

*A. Evidence Regarding Leo Smith*

{¶ 13} First, Koen claims that the trial court erred in concluding (1) that Koen's relationship with Leo Smith, the leader of her church, was relevant to the custody determination and (2) that the magistrate gave reasonable weight to the evidence about Smith.

{¶ 14} Koen testified that she is a minister with Holy Temple, a church with 10 to 15 congregants.   Smith is the leader of the ministry.   Koen joined the ministry in 2011, and her mother is the church's administrator.   Since 2013, Koen has been working for the ministry in Dayton, where the ministry has a childcare center with 40 to 50 children. Koen moved to Richmond in November 2018 in anticipation of establishing a childcare center for the ministry there.   Koen stated that she drives vehicles owned by the ministry; Lowe testified that a vehicle that Koen drove had bullet holes.

{¶ 15} Koen testified that the minor children are involved in church-related activities at her church.   She stated that her daughter runs "the [video] board as far as the tapings and putting the information online.   My son helps with some of the maintenance, some of the cleaning." Koen indicated that her son would "do offering * * * [and] some ministering training type things like maybe do a quick Bible study."   The children also pray and lead songs.

{¶ 16} Koen acknowledged that Smith had a felony record. Koen stated that Smith had been charged with "usually drug trafficking, you know, different – different things." Koen asserted that Smith's record was "clear through" Ohio and Indiana.

{¶ 17} The magistrate referred to Smith as Koen's "paramour," and Koen objected to that characterization, stating that she had no intimate relationship with Smith (a fact to which she testified). Koen also objected to the magistrate's consideration of Smith's criminal history and her use of a vehicle with bullet holes, arguing that it was inappropriate to "stack inferences" to suggest that Smith would be a bad influence. Koen argued in her objections that the magistrate placed undue emphasis on the evidence about Smith.

{¶ 18} As part of its determination of the children's best interest, the trial court was entitled to consider individuals with whom the minor children would have significant contact, regardless of whether that person had an intimate relationship with a parent. Given the small size of the ministry, Koen's significant involvement with the ministry, and the children's participation in ministry activities while with Koen, the magistrate and the trial court reasonably considered whether Koen's association with Smith would negatively affect the children.

*B. Education and Childcare*

{¶ 19} Second, Koen claims that the evidence supports a conclusion that she would better meet the children's educational and childcare needs.

{¶ 20} At the April 23, 2019 hearing, both parties asserted that the other parent had deficiencies as to their ability to care for the children and meet the children's educational needs. Koen stated that Lowe left the children unattended or with irresponsible caregivers, such as the parties' 19-year-old son, who has mental health

concerns and has used marijuana and other drugs. Koen asserted that Lowe did not provide appropriate care for their children, such as when their daughter had strep throat, and that he interfered with Koen's visitation with and custody of the children. Koen further asserted that Lowe was indifferent to the children's educational failures, and that she was responsible for obtaining IEPs for the children. Koen claimed that Lowe had engaged in a domestic violence incident prior to their divorce

{¶ 21} Lowe, on the other hand, testified that he, at most, leaves the children alone overnight once per week and has appropriate support in place when he is absent. Lowe indicated that one child was tardy an excessive number of times while in Koen's care, and that she failed to re-register Son for school, requiring him to change schools; Lowe, on the other hand, asserted that he is engaged with the children's schooling and that the children's grades have improved. Lowe claimed that Koen had tried to run over one of their children with her car and had reportedly hit other children. Lowe also testified that Koen interfered with his visitation with and custody of the children, such as when Koen entered his home and took Daughter without permission.

{¶ 22} It was the role of the trial court to evaluate the credibility of the parties. The court reasonably concluded, based on the evidence, that Lowe "is aware of and supportive of the children's educational needs, that his testimony was credible as to his arrangements for the care of the children while he is working, and that the care plan [he] has in place is reasonable for children of [Son]'s and [Daughter]'s ages." The trial court did not abuse its discretion in making those findings.

*C. Best Interest of the Children*

{¶ 23} Finally, upon review of the statutory factors, the trial court did not abuse its

discretion in designating Lowe as the residential and custodial parent. The magistrate did not interview the children and there was no guardian ad litem; thus, the children's wishes were not before the court. Each parent raised concern about the other's having custody of the minor children. Both parents believe that they have a good relationship with the children. Lowe described activities that he does with the children, including cooking, fishing, going to the gym, and shopping. The evidence indicated that the children get along with each other. Lowe asserted that Koen had engaged in abusive behavior toward some of their children; Koen testified that the children needed a more "stabilized" environment where they could have "space and continuity," which she could provide. Each party claimed that the other interfered with parenting time.

{¶ 24} The children have been going to school in Dayton, and Lowe indicated that they have become involved in extra-curricular activities and made close friends. The children have IEPs, which has led to an improvement in the children's academic performance and self-esteem.

{¶ 25} Koen moved to Richmond, Indiana in November 2018. Other than involvement in the ministry, Koen did not describe activities that the child would do there or indicate where the children would go to school. The church for which Koen is a minister is small and led by Smith, who has a felony record and has been involved with drug trafficking.

{¶ 26} In addition to finding that Lowe was supportive of the minor children's educational needs and that he had a reasonable plan to care for the children while he worked, the trial court found that it was in the children's best interest "to keep them in the schools where they already have IEPS and tactics in place to accommodate their learning

difficulties." In doing so, the court focused on retaining "stability and consistency" in the children's lives. We find no abuse of discretion in the trial court's reasoning and in its conclusion that designating Lowe as the residential and custodial parent was in the children's best interest.

{¶ 27} Koen's assignment of error is overruled.

## IV. Conclusion

{¶ 28} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

David E. Stenson
Walter W. Lowe
Hon. Timothy D. Wood